475 So.2d 112 (1985)
Melvin Henry JEPSEN and Nina Jo Jepsen, Appellees,
v.
B-CON CONSTRUCTION CO., INC. and the Travelers Insurance Company, In Solido, Appellants.
No. 17144-CA.
Court of Appeal of Louisiana, Second Circuit.
August 21, 1985.
*113 C. William Gerhardt & Associates by C. William Gerhardt, Shreveport, for appellees.
Mayer, Smith & Roberts by Mark A. Goodwin, Shreveport, for appellants.
Before JASPER E. JONES, NORRIS, and LINDSAY, JJ.
JASPER E. JONES, Judge.
This is an action to recover workers' compensation death benefits, funeral charges, penalties and attorney's fees. The defendants appeal a judgment awarding death benefits in the amount of $40,000.00 and funeral costs in the amount of $3,000.00 and denying the other demands. We affirm.

The Issues
This appeal presents three issues for our consideration:
1. Is there subject matter jurisdiction over this action;
2. If so, which state's law applies to the substantive issues; and
3. Is this death one for which benefits are due.[1]

The Facts
The plaintiffs are Melvin and Nina Jepsen. They are the parents of Michael Jepsen who was unmarried and had no children at his death. The defendants are B-Con Construction Co., Inc., and its workers' compensation insurer, The Travelers Insurance Company.
The following events led to the death of Michael Jepsen and the filing of this action.
Michael Jepsen was domiciled in Caddo Parish, Louisiana, where he lived with his parents. For approximately four months ending in November, 1981, Jepsen worked for B-Con in Shreveport, Louisiana, installing cable television service lines. Jepsen's employment with B-Con ended when the Shreveport job was completed.
After working on several other jobs for other employers, Jepsen contacted his former B-Con supervisor, Mr. Louis Phillippi, in late July, 1982. Jepsen, while in Shreveport, called Phillippi who was in Memphis, *114 Tennessee, where he was acting as project manager of another B-Con job.
Jepsen asked Phillippi if there were any openings on the Memphis project. Phillippi informed Jepsen that there was a job available which he could have if he came to Memphis. Jepsen then traveled to Memphis and applied for the job. As promised, Phillippi put Jepsen to work while his application was referred to B-Con's home office in Shreveport for final approval. Final approval was given on August 2, 1982. After arriving in Memphis, Jepsen lived with Phillippi in the apartment which served as B-Con's office.
During the week preceding August 15, 1982, Phillippi was instructed by the home office to return some equipment so that it could be transferred to another project. Phillippi informed Jepsen of his instructions but did not order him to accompany him to Shreveport. However, Phillippi did desire Jepsen's assistance and Jepsen eagerly agreed to go to Shreveport with Phillippi. Jepsen was eager to go to Shreveport so that he could obtain a vehicle from his parents and bring it back to Memphis. Jepsen mentioned this to Phillippi before the men left Memphis.
On Saturday, August 14, 1982, Phillippi and Jepsen loaded the equipment on a B-Con truck and drove from Memphis to Shreveport where they unloaded it at the B-Con warehouse. Phillippi then dropped Jepsen off at his parents' home.
The next day the men left to return to Memphis. Phillippi led in the B-Con truck followed closely by Jepsen in a van he had obtained from his parents. The men were in contact by CB radio as they traveled.
The men stopped in the Little Rock, Arkansas, area for lunch and both their meals were charged to Phillippi's B-Con expense account. Shortly after they resumed their trip, Jepsen was killed in an auto accident.
The plaintiffs brought this action and the defendants first answered and then filed an exception of lack of subject matter jurisdiction. The exception was sustained by the trial judge but after the plaintiffs amended their petition the exception was referred to the merits.
After a trial on the merits the district judge rendered the judgment complained of. The defendants' motion for new trial was denied and this appeal followed.

Issue # 1
The first issue presented is whether there is subject matter jurisdiction to decide this case. The district judge's excellent written reasons for judgment show that he found that there was subject matter jurisdiction based on LSA-R.S. 23:1035.1(1)(b). LSA-R.S. 23:1035.1(1) provides:
(1) If an employee, while working outside the territorial limits of this state, suffers an injury on account of which he, or in the event of his death, his dependents, would have been entitled to the benefits provided by this Chapter had such injury occurred within this state, such employee, or in the event of his death resulting from such injury, his dependents, shall be entitled to the benefits provided by this Chapter, provided that at the time of such injury
(a) his employment is principally localized in this state, or
(b) he is working under a contract of hire made in this state.
The defendants argue that neither requirement for extraterritorial application of Louisiana's workers' compensation law is present and that, therefore, there is no subject matter jurisdiction. The plaintiffs contend that Jepsen was working under a contract of hire made in this state. The trial judge found plaintiffs' contention to be correct.
The record shows that Jepsen called Phillippi from Louisiana. Phillippi told Jepsen that he had an opening and that he could have the job if he came to Memphis to put in an application. Jepsen's application was given final approval by company officials in Shreveport.
Plaintiffs rely on Ohlhausen v. Sternberg, 218 La. 677, 50 So.2d 803 (1951), to support their argument that the decedent was working under a Louisiana contract of *115 hire. In Ohlhausen the plaintiff, who had previously worked for defendant, called defendant's hiring official in Florida from Louisiana. Plaintiff was told he could have a job if he went to the location in Florida where work was being done. Plaintiff went to Florida and began work. Sometime later he was injured in Arkansas. The supreme court ruled that the contract of employment was made in Louisiana and applied this state's workers' compensation law.
This case differs from Ohlhausen only in that Jepsen had to submit an application and the application had to be finally approved in the defendant's Louisiana home office. The record makes it clear that Jepsen's application was a mere formality and for that reason we find it to be of no legal significance. It is of some importance that Phillippi's decision to hire Jepsen was subject to final approval by the home office but this fact makes this case stronger than Ohlahausen for the reason that the final approval was also given in this state. We conclude, as the trial judge correctly did, that Jepsen's contract of hire was made in Louisiana. Ohlahausen v. Sternberg, supra. There is subject matter jurisdiction over this case.

Issue # 2
Defendants contend that this case ought to be decided under Tennessee or Arkansas law. Defendants have provided no authority for this contention.
There is statutory authority and jurisprudence contrary to defendants' position. LSA-R.S. 23:1035.1; Ohlhausen v. Sternberg, supra; Mattel v. Pittman Construction Company, 248 La. 540, 180 So.2d 696 (1965); Welch v. Travelers Insurance Company, 225 So.2d 623 (La.App.1st Cir. 1969). Based upon these authorities, we find Louisiana law was correctly applied to this case.

Issue # 3
The final issue for our consideration is whether Jepsen's death was sufficiently connected with his employment to provide coverage under the workers' compensation law.
Defendants argue that Jepsen was not engaged in the business of his employer at his death. They contend he was on a purely personal mission to obtain transportation. This position is supported by the general rule that an accident which befalls an employee while he is going to or returning from work does not occur in the course of his employment. Malone and Johnson, Workers' Compensation, § 168 p. 344.
"Generally, for an injury to be compensable under our worker's compensation law, the injury must be "by accident arising out of and in the course of [the claimant's] employment ..." La.R.S. 23:1031. In order to determine if an employee experienced an accident "arising out of" his employment, it must be determined whether the accident was the result of some risk to which the employee was subjected in the course of his employment and to which he would not have been subjected had he not been so employed. The "during the course of" element of the compensation statute brings into focus the time and place relationship between the accident and the employment. Guidry v. Sline Industrial Painters, Inc., 418 So.2d 626 (La. 1982); Reynolds v. Be-Neat Tank Cleaning Corp., 425 So.2d 881 (La.App. 4th Cir.1983). Ordinarily, an employee injured while going to or returning from work is not entitled to compensation because the injuries are considered as not arising during the course of the employment. Gardner v. Industrial Indemnity Company, 212 So.2d 452 (La.App. 1st Cir.1968). However, this rule is subject to a number of jurisprudentially established exceptions." Thomas v. RPM Corp., 449 So.2d 18 (La.App. 1st Cir. 1984), writ denied, 450 So.2d 965 (La. 1984).
Among these exceptions are situations where the accident occurs during a trip the employee is making in the interest *116 of his employer's business and situations where the employee is doing his work under circumstances where the employer's consent can be fairly implied. Reynolds v. B-Neat Tank Cleaning Corp., supra; Thomas v. RPM Corporation, supra.
Phillippi desired Jepsen's assistance and the record will permit no conclusion but that he consented to Jepsen assisting him in taking the equipment to Shreveport. A necessary part of transporting the equipment to Shreveport was returning to Memphis where the men were assigned their usual duties. As a necessary part of the job, the return to Memphis must be considered as having been consented to as well.
This special assignment, undertaken by Jepsen with the consent of his superior, Phillippi, required that he be where he was when the fatal accident occurred. We have no doubt that Jepsen's death would have been compensable had it occurred while he was returning to Memphis in the B-Con truck. Defendants contend, however, that the result should be different because Jepsen was driving a personal vehicle.
Defendants' position ignores several significant facts. First, Jepsen's superior, Mr. Phillippi knew before the men left Memphis that Jepsen planned to bring back a personal vehicle on the return trip and never indicated this was not satisfactory. This shows that Phillippi consented to Jepsen's plan to return in a personal vehicle.
Second, on the return trip, shortly before the accident, Phillippi bought lunch for both men and charged it to his B-Con expense account. This shows that Phillippi considered Jepsen to be on B-Con's business at the time.[2]
An employee's personal mission and his employer's business are not necessarily mutually exclusive. Cf. Johnson v. Wallace Industrial Constructors, 224 So.2d 31 (La.App. 1st Cir.1969); writ denied, 254 La. 782, 226 So.2d 771 (1969).
Here Jepson remained in constant contact with Mr. Phillippi by CB radio. He followed Phillippi closely and would have been almost instantly available to Phillippi in the event of any need. Jepsen was using his personal vehicle for the return trip with, at least, the implied consent of Phillippi and his use of that vehicle in no way impaired his employer's need to have the equipment delivered to Shreveport.
The totality of the circumstances establish the round trip of Jepsen from Memphis to Shreveport and back to Memphis was in the interest of his employer's business and was with its implied consent. Jepsen's death was in an accident arising out of and in the course of his employment.
The plaintiffs are entitled to recover.

Conclusion
The assignments of error are without merit and the judgment is affirmed at defendants' costs.
NOTES
[1] The defendants make three assignments of error. They contend the trial judge erred in: (1) finding that there was subject matter jurisdiction; (2) applying Louisiana law; and (3) finding that the decedent's death arose out of and occurred in the course and scope of his employment so as to be compensable.
[2] It does not appear that Jepsen was to be paid for the trip time by B-Con; however, this does not defeat the claim. See Maurice v. Orleans Parish School Board, 295 So.2d 184 (La.App. 4th Cir.1974) (substitute teacher not barred from workers' compensation because she was not to be paid for after school work during which she was injured.)