692 So.2d 1113 (1997)
Mae Ola BOLTON
v.
TULANE UNIVERSITY OF LOUISIANA; State Farm Mutual Automobile Insurance Co.; National Car Rental Systems, Inc.; Allstate Indemnity Co.; and Hartford Insurance Co. Of the Southeast.
No. 96-CA-1246.
Court of Appeal of Louisiana, Fourth Circuit.
January 29, 1997.
Order Clarifying Decision on Grant of Rehearing April 9, 1997.
*1115 Clifton E. Cardone, Cardone Law Firm, New Orleans, for Plaintiff/Appellant.
Donna Powe Green, David P. Curlin, Trinchard & Trinchard, New Orleans, for National Car Rental System, Inc.
Christopher E. Lozes, Lozes & Cambre, New Orleans, for Allstate Insurance Co.
John J. Erny, III, Frederick A. Miller & Associates, Metairie, for Administration Tulane Educational Fund, Hartford Fire Insurance Company And Elizabetth Yopp.
*1116 C. Gordon Johnson, Jr., Charles L. Chassaignac, IV, Porteous, Hainkel, Johnson and Sarpy, New Orleans, for State Farm Mutual Automobile Insurance Co.
Before BYRNES, ARMSTRONG and PLOTKIN, JJ.
PLOTKIN, Judge.
This consolidated appeal involves four separate rulings on motions for summary judgment contained in a single trial court judgment, all of which turn on a determination of whether plaintiff Mae Ola Bolton was in the course and scope of her employment as an assistant women's basketball coach at defendant Tulane University at the time she was injured in a car accident. For the reasons which follow, we reverse the trial court judgments and grant summary judgment in favor of defendants Tulane University, Hartford Insurance Co., Elizabeth Yopp, State Farm Insurance Co., and Allstate Indemnity Co., dismissing them from the suit.
Consolidated with the above judgment for purposes of this appeal is a summary judgment in the same case dismissing defendant National Car Rental Systems, Inc. (hereinafter referred to as "National"), owner and alleged insurer of the car in which Ms. Bolton was riding at the time of the accident. That judgment is based on the trial court's finding that National had no insurance liability for the accident in question under the contract governing the relationship between the parties. Because we find that genuine issues of material fact exist, we reverse the summary judgment in favor of National. The case is remanded to the trial court for further proceedings on the issue of National's liability to Ms. Bolton.

I. Facts and procedural history

The facts of the instant case are undisputed. Plaintiff Ola Mae Bolton was hired by Candy Harvey, Tulane's head women's basketball coach, as an assistant coach effective in August of 1993. Among Ms. Bolton's most important job duties were responsibilities related to the recruitment of new players for the team, responsibilities she shared with the other assistant coach, Elizabeth Yopp, who had been working for Ms. Harvey for some two years prior to the time Ms. Bolton was hired. Both Ms. Bolton and Ms. Yopp received a set monthly salary. As a part of their recruiting activities, they were required to travel, including some late night travel and some overnight travel during which they had to stay in hotels. When travelling on a recruitment trip, the assistant coaches typically drove vehicles rented on a Tulane account, or paid for with a Tulane credit card. All expenses of these recruitment trips were paid by Tulane.
During official National College Athletic Association ("NCAA") "quiet periods," a prospective basketball team member could travel to a university for an "official visit," paid for by the university. Although Tulane often paid for prospective players to fly to New Orleans for an "official visit," at other timesespecially when the student lived close to New Orleans or lived in an area which was not easily accessible by airthe assistant coaches personally drove from New Orleans to the student's home and brought the student back to Tulane for the official visit. At the end of the visit, the assistant coaches personally drove the student back to her home. These types of trips were considered typical recruitment trips which were paid for by Tulane.
The women's basketball team coaches arranged such an official visit for Yvette Porter, a high school senior basketball player from Louisville, Mississippi, for a weekend during a "quiet period" on November 67, 1993. Because Ms. Porter lived in an area not easily accessible by air, the decision was made for the assistant coaches to provide automobile transportation for Ms. Porter, as described above. Prior to the weekend, the coaches agreed that Ms. Bolton would drive to Jackson, Mississippi, to retrieve Ms. Porter after she played in a softball game for her high school on Saturday, November 6. Ms. Yopp was to make the four-hour trip to return Ms. Porter to her home in Louisville, Mississippi, on Sunday, November 7. In anticipation of the trip, Ms. Bolton rented an automobile from National.
Ms. Bolton successfully completed her part of the agreement, driving to Jackson, Mississippi, *1117 and bringing Ms. Porter back to Tulane on the morning of Saturday, November 6.[1] Ms. Porter stayed in New Orleans overnight, engaging in various activities with team members and the coaches, and visiting with Tulane professors. During the entire weekend, one of the coaches transported Ms. Porter to activities in the automobile rented from National. Near the end of her stay in New Orleans, Ms. Porter attended a practice session of the Tulane women's basketball team as an observer. Thereafter, she was treated to dinner at Copeland's restaurant on St. Charles Avenue with a couple of the team members and all three coaches.
The dinner at Copeland's lasted longer than the coaches had anticipated, not ending until approximately 9 p.m. Nevertheless, Ms. Porter had to be returned to her home in Louisville, Mississippi, prior to 8 a.m. on the morning of Monday, November 8, pursuant to an NCAA rule. As Ms. Yopp prepared for the return trip to Louisville, Mississippi, Ms. Bolton "volunteered" to accompany her on the trip in order to help with the driving because of the lateness of the hour. Neither Ms. Yopp nor Ms. Harvey asked her to make the trip, but they were very pleased when she decided to do so.[2]
The trip from New Orleans to Louisville, Mississippi, was apparently uneventful. The assistant coaches took turns driving, and Ms. Porter was successfully delivered to her home prior to the deadline. However, during the trip back to New Orleans from Louisville, Mississippi, sometime after midnight, while Ms. Yopp was driving the automobile, an accident occurred on Highway 15 south of Louisville, Mississippi. Ms. Yopp apparently fell asleep at the wheel; Ms. Bolton was allegedly already sleeping at the time. The car went down a ravine; Ms. Bolton sustained severe injuries, including a broken neck.
Tulane paid workers' compensation benefits to Ms. Bolton for some period of time after the accident; additionally, Tulane paid many of Ms. Bolton's medical expenses. Thereafter, Ms. Bolton filed a tort action against the following defendants: Ms. Yopp, driver of the automobile; Tulane, Ms. Yopp's employer; Hartford, Tulane's insurer (hereinafter collectively referred to as "Tulane"); State Farm, Ms. Yopp's personal automobile liability insurer (hereinafter referred to as "State Farm"); National, owner of the automobile and insurer under a contract; and Allstate Indemnity Co., Ms. Bolton's uninsured motorist (UM) insurer (hereinafter referred to as "Allstate"). All of the defendants responded by filing motions for summary judgment.
The motion for summary judgment filed by Tulane was premised on the argument that Ms. Bolton's exclusive remedy against Tulane is workers' compensation under the provisions of LSA-R.S. 23:1032 because Ms. Bolton was negligently injured by a co-employee while in the course and scope of her employment. Because the workers' compensation tort immunity defense is not personal to the employer, State Farm and Allstate premised their motions for summary judgment on the same argument, as described in greater detail below. Ms. Bolton filed a cross motion for summary judgment, claiming that she was not in the course and scope of her employment at the time of the accident.
The trial court granted Ms. Bolton's motion for summary judgment, finding that she was not in the course and scope of her employment with Tulane at the time of the accident. Based on the same finding, the trial court denied the motions for summary judgment filed by Tulane, State Farm, and Allstate. Tulane, State Farm, and Allstate appeal the summary judgment in favor of Ms. Bolton on the course and scope issue. State Farm also appeals the denial of its motion for summary judgment. Tulane and *1118 Allstate filed applications for supervisory writs in this court seeking review of the judgments denying their motions for summary judgment on the course and scope issue; the applications for supervisory writs were converted to appeals and consolidated with this appeal.
The motion for summary judgment filed by National was premised on provisions of the rental agreement signed by Ms. Bolton. The trial court granted the motion for summary judgment filed by National based on the language of the contract between the parties. Ms. Bolton appealed the judgment granting the motion for summary judgment in favor of National.

II. Standard for deciding motion for summary judgment

The standard for reviewing a motion for summary judgment was recently stated by this court in Daniel v. Blaine Kern Artists, Inc., 96-1348 (La.App. 4th Cir. 9/11/96), 681 So.2d 19, as follows:
Appellate courts review summary judgments de novo. An appellate court thus asks the same questions as does the trial court in determining whether summary judgment is appropriate: whether there is any genuine issue of material fact, and whether the mover is entitled to judgment as a matter of law. In determining whether an issue is "genuine," courts cannot consider the merits, make credibility determinations, evaluate testimony or weigh evidence.
Procedurally, the court's first task on a motion for summary judgment is determining whether the moving party's supporting documentspleadings, depositions, answers to interrogatories, admissions and affidavitsare sufficient to resolve all material factual issues. LSA-C.C.P. art. 966(B).
Id. at 20.
If the court finds that a genuine issue of material fact exists, summary judgment must be rejected. Walker v. Kroop, 96-0618 (La. App. 4th Cir. 7/24/96), 678 So.2d 580, 584. Thus, the burden does not shift to the party opposing the summary judgment until the moving party first presents a prima facie case that no genuine issues of material fact exist. Id. At that point, the party opposing the motion must "make a showing sufficient to establish existence of proof of an element essential to his claim, action, or defense and on which he will bear the burden of proof at trial." La. C.C.P. art. 966(C).
This court has previously gone on record to say that the 1996 amendments to La. C.C.P. art. 966(C) do not change the existing law concerning genuine issues of material fact and burdens of proof applied to a summary judgment proceeding. See Daniel, 681 So.2d at 20-21; Walker, 678 So.2d at 583; Short v. Giffin, 96-0361, (La.App. 4th Cir. 8/21/96), 682 So.2d 249, 251. However, the amendment did make a change in the law to the extent that it now proclaims that summary judgments are "favored" and thus the rules should be liberally applied, which requires courts to change their attitudes when reviewing motions for summary judgment from the attitudes required under the preamendment jurisprudence which proclaimed just the oppositethat summary judgment were not favored and thus should be strictly construed. The language of the amendment tracks the language of Federal Rule of Civil Procedure 56, and is designed to allow courts to decide whether enough evidence exists to go to trial, thus giving judges an opportunity to weed out meritless litigation.
Moreover, once a party seeking a summary judgment properly supports the motion and carries his burden of proof, the new law requires the non-moving party who opposes the motion for summary judgment to submit evidence showing the existence of specific facts establishing a genuine issue of material fact, effectively shifting the burden of proof to the non-moving party as does the federal rule. This creates a problem because La. C.C.P. art. 966(G) declares that "notwithstanding any other provision of this Article to the contrary, the burden of proof shall remain with the mover." Under the amendment the non-moving party is not allowed to rely on the allegations of its pleadings in opposition to a properly-supported motion for summary judgment.

*1119 III. Motions for summary judgment based on course and scope issue

As indicated above, four of the trial court's rulings on review in this appeal turn on a determination of whether Ms. Bolton was within the course and scope of her employment with Tulane at the time of the accident. If she was within the course and scope of her employment, then Tulane, State Farm, and Allstate are all entitled to summary judgment because Ms. Bolton's exclusive remedy is workers' compensation. The trial court found that Ms. Bolton was not within the course and scope of her employment and therefore granted a summary judgment on this issue in Ms. Bolton's favor. Because the parties agree on the facts relative to this issue, no genuine issues of material fact exist. Thus, this court is required to review those facts de novo in the light of the applicable law and determine whether any of the parties are entitled to judgment as a matter of law.
We note first that the trial court's granting of the motion for summary judgment on the course and scope issue in Ms. Bolton's favor was improper because it constituted a partial summary judgment which decided only one of several issues Ms. Bolton would be required to prove at trial in order to recover from any of the defendants. The Louisiana Supreme Court in the recent case of Norlander v. Illinois National Insurance Co., 96-1627 (La.10/4/96), 680 So.2d 1166, held that the granting of a motion for summary judgment finding only that an employee was not within the course and scope of his employment "was an improper use of summary judgment that promoted piecemeal appeals." Id. at 1167. Thus, the granting of the motion for summary judgment in Ms. Bolton's favor is improper for that reason, as well as for the other reasons discussed below. Unlike the granting of a motion for summary judgment finding that an employee was not within the course and scope of his employment, which is improper as described above, the granting of a motion for summary judgment finding that an employee was within the course and scope of his employment is a proper use of a motion for summary judgment. In Norlander, 680 So.2d at 1167, the Louisiana Supreme Court specifically stated that "[a] motion for summary judgment was proper for the defendant's alleged employer to seek dismissal from the action based on defendant's being outside the course and scope of employment." Although the alleged employee in the instant case is the plaintiff rather than the defendant, the same principle applies. Granting a motion for summary judgment on the course and scope issue in favor of the Tulane, State Farm, and Allstate in the instant case would be proper because it would result in the dismissal of those defendants from the suit, which does not promote piecemeal appeals. Thus, we will analyze whether Tulane, State Farm, and Allstate are entitled to judgment as a matter of law because Ms. Bolton was within the course and scope of her employment at the time of the accident giving rise to the instant suit.

A. Applicable law

Ms. Bolton claims that Mississippi law should be applied in the instant case because the accident happened in Mississippi. Under Mississippi law, Ms. Bolton claims, she would be entitled under the circumstances of this case to choose either to seek a tort recovery against Tulane or to seek workers' compensation benefits, regardless of whether she was in the course and scope of her employment at the time of the accident. However, a review of the Louisiana workers' compensation scheme indicates that Louisiana law applies, despite the fact the accident occurred in Mississippi. LSA-R.S. 23:1035.1, relative to the extraterritorial application of Louisiana's workers' compensation law, states, in pertinent part, as follows:
(1) If an employee, while working outside the territorial limits of this state, suffers an injury on account of which he ... would have been entitled to benefits provided by this Chapter had such occurred within this state, such employee ... shall be entitled to the benefits provided by this Chapter, provided that at the time of such injury
(a) his employment is principally localized in this state, or

*1120 (b) he is working under a contract of hire in this state.
The Louisiana jurisprudence interpreting the above statute indicates that when either of the two circumstances listed in LSA-R.S. 23:1035.1(1) is present, the statute "can and must be given territorial effect." Welch v. Travelers Insurance Co., 225 So.2d 623, 625 (La.App. 1st Cir.), writ denied, 254 La. 852, 227 So.2d 594 (1969). In such situations, Louisiana has an interest in the case and Louisiana courts have jurisdiction to apply Louisiana law. Mattel v. Pittman Construction Co., 248 La. 540, 180 So.2d 696 (1965). When a case falls within the purview of LSA-R.S. 23:1035.1, Louisiana courts are not required to consider the provisions of the laws of another state where an accident occurred. Ohlhausen v. Sternberg, 218 La. 677, 50 So.2d 803, 804 (1951). This rule was stated and followed most recently in Jepsen v. B-Con Construction Co., 475 So.2d 112, 115 (La.App. 2d Cir.1985).
In the instant case, the record reveals both that Ms. Bolton's employment was principally localized in Louisiana and that she was working under a contract of hire made in Louisiana. Thus, Louisiana's workers' compensation scheme applies to this suit.

B. Course and scope of Ms. Bolton's employment with Tulane under Louisiana law

The extent of an employer's liability for paying workers compensation benefits to an injured employee is controlled by LSA-R.S. 23:1031(A), which provides as follows:
If an employee not otherwise eliminated from the benefits of this Chapter receives personal injury by accident arising out of and in the course of his employment, his employer shall pay compensation in the amounts, on the conditions, and to the person or persons hereinafter designated.
The exclusivity of these provisions is established by LSA-R.S. 23:1032, which provides, in pertinent part, as follows:
The rights and remedies herein granted to an employee or his dependent on account of an injury, or compensable sickness or disease for which he is entitled to compensation under this Chapter, shall be exclusive of all other rights and remedies of such employee.
Under the jurisprudence interpreting the above articles, an employee's exclusive remedy against his employer for an injury occurring within the course and scope of his employment is workers' compensation benefits. Tucker v. Northeast Louisiana Tree Service, 27,768 (La.App.2d Cir. 12/6/95), 665 So.2d 672, 676, writs denied, 96-0063, 0100 (La.3/8/96), 669 So.2d 404. Generally, a party to a lawsuit seeking to prove that an employee was within the course and scope of his employment must prove two elements: (1) that the injury suffered by the employee arose out of the employment ("the arising-out-of requirement"), and (2) that the employee suffered the injury during the course of his employment ("the during-course-of requirement"). See Kennedy v. Martin Gas Transportation Co., 96-100 (La.App. 3d Cir. 8/21/96), 680 So.2d 1195, 1196. An employer who seeks to avail itself of the tort immunity of the workers' compensation statutes bears the burden of proving entitlement to the immunityi.e. that the worker was within the course and scope of his employment at the time of his injury. Tucker, 665 So.2d at 677.
The Louisiana Supreme Court discussed the requirements of LSA-R.S. 23:1032 in Guillory v. Interstate Gas Station, 94-1767 (La.3/30/95), 653 So.2d 1152 as follows:
The terms "arising out of" and "in the course of" constitute a dual requirement. The former suggests an inquiry into the character or origin of the risk while the latter brings into focus the time and place relationship between the risk and the employment. The two requirements cannot, however, be considered in isolation from each other. A strong showing ... with reference to the arise-out-of requirement may compensate for a relatively weak showing on the during-course-of requirement, or vice versa. As a corollary it follows that whenever the showing with respect to both requirement is relatively weak a denial of compensation is indicated.
Id. at 1154.
Some of the factors to be weighed in determining course and scope of employment *1121 include the following: (1) "the time, place and purpose of the act in relation to the service of the employer," (2) "the relationship between the employee's act and the employer's business," (3) "the reasonable expectation of the employer that the employee would perform the act." Reed v. House of Decor, Inc., 468 So.2d 1159, 1161 (La.1985); Michaleski, 472 So.2d at 21.
The exclusive workers' compensation remedy has been applied in cases where an accident occurred during a trip taken by an employee "in the interest of his employer's business," under circumstances indicating that the employer's consent to the travel may be fairly implied. Jepsen v. B-Con Construction Co., 475 So.2d 112, 115-16 (La. App. 2d Cir.1985), citing Thomas v. RPM Corporation, 449 So.2d 18 (La.App. 1st Cir.), writ denied, 450 So.2d 965 (La.1984); Reynolds v. Be-Neat Tank Cleaning Corp., 425 So.2d 881 (La.App. 4th Cir.1983). When an accident occurs while "the employee is on a mission contemplated by employer and employee for which he is to be compensated," the employee is considered to be within the course and scope of his employment. Michaleski v. Western Preferred Casualty Co., 472 So.2d 18, 21 (La.1985). "An employee's personal mission and his employer's business are not necessarily mutually exclusive." Jepsen, 475 So.2d at 116.

1. Arising-out-of requirement

The character or source of the risk giving rise to the injury and the relationship of the risk to the nature of the employment is the focus of the determination of whether an accident arises out of employment. Mundy v. Department of Health and Human Resources, 593 So.2d 346, 349 (La. 1992); Tucker, 665 So.2d at 677. Anytime the risk which causes the injury is greater for the employee than for persons not so employed an accident is considered to arise out of employment. Mundy, 593 So.2d at 349; Tucker, 665 So.2d at 677; Meaux v. Cormier, 554 So.2d 285, 287 (La.App. 3d Cir.1989) Moreover, virtually any risk, whether or not it is an increased risk, is considered to arise out of employment if it occurs when the employee is "squarely" within the course of his employment.
The arising-out-of requirement is designed to separate accidents which may be attributed to employment risks, which are compensable, from accidents which may be attributed only to personal risks. Mundy, 593 So.2d at 349; Yates v. Naylor Industrial Services, Inc., 569 So.2d 616, 620 (La.App. 2d Cir.1990), writ denied, 572 So.2d 92 (La. 1991). A determination of whether an accident arises out of the employment requires that a court consider only the following questions:
1) Was the employee then engaged about his employer's business and not merely pursuing his own business or pleasure; and (2) did the necessities of that employer's business reasonably require that the employee be at the place of the accident at the time the accident occurred?
Meaux, 554 So.2d at 287, quoting Kern v. Southport Mill, 174 La. 432, 141 So. 19 (La. 1932). See also Yates, 569 So.2d at 620.
Applying the above principles to the instant case, we find that the risk which caused the accident which resulted in Ms. Bolton's injuries unquestionably arose out of her employment duties. Ms. Bolton's boss, Ms. Harvey, was present when Ms. Bolton decided to accompany Ms. Yopp on the trip to return Ms. Porter to her home. Ms. Harvey testified concerning her reaction to the idea as follows: "I said that I thought that was a very good idea and that actually I was very pleased that that was what was taking place." Harvey deposition, p. 39. Ms. Harvey admitted that the offer was not a requirement of the job and that she did not order Ms. Bolton to accompany Ms. Yopp on the return trip, although it did fall "within the ramifications of her job." Id. at 40.
Ms. Harvey testified that she was pleased with the idea for a couple of reasons, both of which were beneficial to Tulane. The first reason was that Ms. Yopp needed company on the return trip because she was leaving so late at night and having two drivers taking turns would be safer. Id. at 69. The second reason was grounded in the fact that having an additional person to engage the recruit in *1122 conversation would make the trip more enjoyable for the recruit. Id. Ms. Bolton was especially suited to make Ms. Porter feel more comfortable, Ms. Harvey said, because she was well-known in the area where Ms. Porter lived and had a prior relationship with Ms. Porter's coach and because she had been present when Ms. Harvey made the home visit with Ms. Porter. Id. at 70.
Ms. Harvey also said that Ms. Bolton's being involved in additional recruiting was a "favorable thing" for her to do. Id. at 67. Getting Ms. Porter back home safely was the "official business" of Tulane, she said. Id. at 71. Ms. Harvey stated several times that she felt that Ms. Bolton was engaged in the responsibilities of her employment with Tulane when she offered to accompany Ms. Yopp on the trip to return Ms. Porter to her home. From this testimony, we can easily conclude that the trip was taken in the interest of Tulane's business with the consent of Ms. Bolton's supervisor, Ms. Harvey.
The only reason the two assistant coaches were riding in the automobile after midnight when the accident happened was the NCAA's requirement that Ms. Porter be returned to her home prior to 8 a.m. that morning. In the absence of the demands of her employment, Ms. Bolton would not have been at the site of the accident. The circumstances of this case definitely meet the requirements established by Meaux because of the following findings: (1) Ms. Porter was engaged in his employer's business, not merely pursuing her own business or pleasure, and (2) the necessities of Tulane's business reasonably required Ms. Bolton to be at the place of the accident when the accident occurred. See Meaux, 554 So.2d at 287.

2. During-course-of requirement

The requirement that an accident occur during the course of employment focuses on the time and place relationship between the risk and the employment. Yates, 569 So.2d at 620. Generally, an employee who sustains injury while actively engaged in the performance of his duties during working hours, either "on the employer's premises or at other places where employment activities take the employee" is considered to have occurred during the course of his employment. Mundy v. Department of Health & Human Resources, 593 So.2d 346, 349 (La. 1992); Tucker, 665 So.2d at 677. Workers' compensation coverage has also been extended to include "accidents at places where employment duties are performed off the employer's premises." Mundy, 593 So.2d at 349; Tucker, 665 So.2d at 677. The principal criteria to consider to determine the during-course-of employment issue are time, place, and employment activity. Mundy, 593 So.2d at 349; Tucker, 665 So.2d at 677. Moreover, an accident is considered to have occurred during the course of an injured employee's employment when "it happens during the time of employment and at a place contemplated by one's employment." Yates, 569 So.2d at 620; Meaux, 554 So.2d at 288.
Most of the cases involving determination of whether an accident causing injury to an employee occurring during a time of travel took place within the course of employment have involved accidents which occurred while the employee was on his way to or from work, or on his lunch hour. As a general rule, such accidents are not considered to have occurred within the course of employment. Tucker, 665 So.2d at 677. Some jurisprudential exceptions to that rule have been established over the years; those exceptions were recently summarized by the Louisiana Second Circuit Court of Appeal in Yates as follows:
1) If the accident happened on the employer's premises;
2) If the employee was deemed to be on a specific mission for the employer, such as making a trip in the interest of his employer's business or pursuant to his employer's order;
3) If the employer had interested himself in the transportation of the employee as an incident to the employment agreement either by contractually providing transportation or reimbursing the employee for his travel expenses;
4) If the employee was doing work for his employer under circumstances where the employer's consent could be fairly implied;

*1123 5) If the employee was hurt while traveling to and from one work site to another;
6) If the employee was injured in an area immediately adjacent to his place of employment and that area contained a distinct travel risk to the employee, also known as the threshold doctrine; and,
7) If the operation of a motor vehicle was the performance of one of the duties of the employment of the employee.
Yates, 569 So.2d at 619-20. See also Kennedy. 680 So.2d at 1197 and cases cited therein.
Applying the above principles to the instant case, we find that the accident which caused Ms. Bolton's injuries unquestionably occurred during the time of Ms. Bolton's employment at a place contemplated by her employment. Yates, 569 So.2d at 620. Ms. Bolton was paid a set amount of money for her services to Tulane; Ms. Bolton's boss, Ms. Harvey, testified by deposition that Ms. Bolton's workings hours varied depending on various circumstances. According to Ms. Harvey, Ms. Bolton was required to be actively engaged in recruiting new players for the team; she was paid for her recruitment activities. Thus, we can conclude that Ms. Bolton's injuries occurred during her working hours, despite the fact the accident after midnight on a Monday morning.
Additionally, the accident occurred at a place other than the employer's premises where employment activities took the employee. See Mundy, 593 So.2d at 349. The accident also occurred during a trip taken by an employee "in the interest of his employer's business" under circumstances indicating that the employer's consent to the travel may be fairly implied. Jepsen, 475 So.2d at 115-16.
Moreover, two of the exceptions to the rule which have developed over the years to apply the workers' compensation exclusive remedy in situations where an employee was travelling and at a place other than his employer's place of business at the time of the accident apply to this case. The second exception listed in Yates applies because Ms. Bolton was deemed to be on a specific mission for Tulane because she was making a trip in the interest of Tulane's business. The fourth exception listed in Yates also applies because Ms. Bolton was doing work for Tulane under circumstance where Tulane's consent could be fairly implied. Thus, consideration of all the relevant facts in light of the applicable jurisprudence leads us unequivocally to conclude that Ms. Bolton was within the course and scope of her employment at the time of the accident.

3. Totality of the circumstances

The relationship between the arising-out-of requirement and the during-course-of requirement for determining whether a given accident falls under the exclusivity provisions of workers' compensation remedy has been described as follows:
[T]he two elements should not be understood as entirely separate requirements to be rigidly and independently exacted. Rather, they should be understood simply as closely intertwined issues that may usefully illuminate the common sense practical question of whether the employee's injury bears some significant relationship to the employer's business operation.
Yates, 569 So.2d at 620. Thus, the determination is based on a consideration of the "totality of the circumstances." Jepsen, 475 So.2d 112.
A consideration of the totality of the circumstances in the instant case in light of the above legal principles easily convinces us that Ms. Bolton was within the course and scope of her employment with Tulane at the time of the accident which caused her injuries. All of these factors taken together show that Ms. Bolton was on a "mission contemplated by employer and employee," for which Ms. Bolton was compensated. Michaleski, 472 So.2d at 21. Certainly, the trip had a "significant relationship" to Tulane's business. Yates, 569 So.2d at 620.
Ms. Bolton has sought to avoid the exclusivity of the workers' compensation remedy by arguing that she was motivated to offer to go on the return trip by her "good Christian upbringing," not by her job responsibilities. However, even if we assume that Ms. Bolton was motivated by her own character *1124 to volunteer for the return trip, that fact does not foreclose a finding that Ms. Bolton was in the course and scope of her employment with Tulane at the time of the accident because "[a]n employee's personal mission and his employer's business are not necessarily mutually exclusive." Jepsen, 475 So.2d at 116.
The Jepsen case is especially instructive on this issue because the plaintiff's decedent in that case had accompanied his supervisor on a business trip to the town where his parents lived in order to pick up a vehicle at his parent's house. The accident which caused his death occurred on the return trip, when he was driving his own vehicle following behind his supervisor. Nevertheless, the court found that he was within the course and scope of his employment because his supervisor had desired his assistance and had consented to him making the trip. Id. at 116. Moreover, the court said, a necessary part of the trip was the return trip; thus, the decedent's employment duties made it necessary for him to be where he was when the fatal accident occurred. Id. The decedent had been in close contact with his supervisor during the entire return trip and thus was available if the supervisor needed assistance. Id. The fact that decedent wanted to obtain transportation did not impeded the need for the business trip, the court said. Id. The employer had paid for the entire trip, including lunch during the return trip, just prior to the accident. Id.
The facts of two other cases which determined the course and scope of employment issue bear mentioning because of their similarities with the instant case. In Meaux, 554 So.2d 285, the plaintiff was injured while he en route to a paint demonstration which his immediate supervisor had requested he attend traveling in a vehicle driven by his supervisor. Despite the fact that attendance at the demonstration, which occurred after regular job hours, was not a job requirement, the court found that the plaintiff was in the course and scope of his employment when the accident occurred. In reaching that conclusion, the court placed great emphasis on the fact that some kind of "expectation" that the plaintiff attend the demonstration was created from the fact that his supervisor asked him to go coupled with the fact that all his co-employees were attending.
In Carlisle v. State Through DOTD, 400 So.2d 284 (La.App. 3d Cir.), writ denied, 404 So.2d 1256 (La.1981), the accident causing the plaintiff's injuries occurred when the plaintiff was riding in a co-employee's car after they had left a residence where they had sought to sell insurance in pursuit of their employer's business. The court found the plaintiff was within the course and scope of his employment despite the fact that the two employees had finished their calls for the day and were going to pick up the plaintiff's car so that he could go home.
We find the Jepsen, Meaux, and Carlisle case much more instructive to determination of the course and scope issue in the instant case than the cases cited by the plaintiff: Tucker, 665 So.2d 672; Anderson v. Mamgano, 94-723 (La.App. 5th Cir. 2/15/95), 652 So.2d 34; and Reed v. Arthur, 556 So.2d 937 (La.App. 3d Cir.1990). The three cases discussed above bear important similarities to the instant case because they included an element of choice on the part of the injured employee. In the cases cited by the plaintiff, the courts emphasized the fact that the employer or supervisor voluntarily offered a ride to the plaintiff, which is a different scenario than that presented by the instant case. Moreover, the accident in the Tucker case occurred at lunch; the accident in the Anderson case occurred after work; and the accident in the Reed case occurred before work. In all three of those cases, the court found that the activities of the plaintiffsi.e. getting home from work, going to work, and going to lunchwere not related to their employment duties. Thus, they do not control the analysis in the instant case.
Accordingly, the motion for summary judgment filed by Ms. Bolton's employer, Tulane, and her co-employee who caused her injuries while she was in the course and scope of her employment, Ms. Yopp, is granted. Ms. Bolton's sole remedy against Tulane, Hartford, and Ms. Yopp is under the provisions of the workers' compensation statutes. LSA-R.S. 23:1035.1(1); LSA-R.S. *1125 23:1032. Tulane, Hartford, and Ms. Yopp are hereby dismissed from the case.

C. Liability of State Farm and Allstate

As indicated above, the motions for summary judgment filed by State Farm and Allstate were also based on the course and scope of employment issue. State Farm was sued in its capacity as Ms. Yopp's liability insurer, while Allstate was sued in its capacity as Ms. Bolton's UM insurer. In her brief in opposition to State Farm's appeal and in oral argument, Ms. Bolton admitted that the insurers are not liable for her accident if she was within the course and scope of her employment with Tulane at the time of the accident. We agree
It is well settled in Louisiana law, that the tort immunity defense under the workers' compensation statute is not personal to the employer, but may be invoked by an insurer sued under the direct action statute. Dauzat v. State Farm Insurance Co., 473 So.2d 920 (La.App. 3d Cir.); Lee v. Allstate Insurance Co., 467 So.2d 44, 47 (La.App. 4th Cir.1985), writ denied, 472 So.2d 593 (La. 1985); Green v. Turner, 437 So.2d 956, 959 (La.App. 2d Cir.1983); Carlisle, 400 So.2d 284.
Because the tort immunity defense is a general defense, it may be invoke by the tortfeasor's liability insurer. Dauzat, 473 So.2d 920; Green, 437 So.2d 956; Carlisle, 400 So.2d 284. Because Ms. Yopp, who is insured by State Farm, is not liable to Ms. Bolton because of the tort immunity defense, neither is her liability insurance company. See Carlisle, 400 So.2d at 287. By the same token, Ms. Bolton's UM insurer is not liable because there is no underlying uninsured or underinsured person who is liable to pay Ms. Bolton. Id. Accordingly, motions for summary judgment are also granted in favor of State Farm and Allstate, who are hereby dismissed from the case.

IV. Language of National contract

The trial court's granting of the motion for summary judgment in favor of National was apparently based on the trial court's acceptance of National's reading of the contracts between the two parties. Typically, interpretation of contract provisions is a matter of law which may properly be decided on a motion for summary judgment. However, because of a unique factual situation involved in the instant case, we find that summary judgment was improvidently granted because of remaining genuine issues of material fact.
A conflict exists in the instant case concerning which of two contractual agreements governs National's relationship with Tulane as renter of the automobile and thus National's insurance obligation to Ms. Bolton. At the time Ms. Bolton rented the automobile from National, she signed a standard rental agreement which provided only $10,000 in liability and UM insurance. However, National had entered an "exclusive agreement" with the NCAA, of which Tulane is an affiliate, which was admittedly in effect at the time of the accident in question. The $100,000 liability and UM insurance coverage provided by that exclusive agreement was ten times greater than the liability coverage provided by the standard rental agreement. National claims that the standard rental contract applies to this accident, while Ms. Bolton claims the exclusive agreement applies. The trial court granted National's motion for summary judgment on this issue, finding that National "did not afford liability coverage or protection for the claims set forth in this litigation." The trial court failed to determine which contract controls.
National's argument that the standard rental contract, rather than the exclusive agreement controls is premised on language in the exclusive agreement under the heading "Insurance," which provided for the greater insurance coverage only "when the rate at the time of rental is a SimCom rate pursuant to this Agreement." Language in the section of the exclusive agreement under the heading "Promotional Rate Discount" stated that the standard rental agreement applied for "rental transactions utilizing these promotional rate discounts."
In support of its motion for summary judgment, National filed an affidavit from its employee Ginny Olsby, who stated that she investigated the accident which resulted in *1126 Ms. Bolton's injuries and determined that Ms. Bolton rented the automobile at a promotional rate discount, not at SimCom rates. However, no corroborating evidence of the rate or other documents were submitted.[3]
We find that the evidence presented by National was insufficient to meet National's burden of proving that all genuine issues of material fact had been resolved. National did not present any proof of the rate actually paid by Tulane for the automobile, nor did it present any proof of the SimCom rates or the promotional rate discounts in effect at the time. Because National's motion for summary judgment was not properly supported by competent evidence, the trial court improperly granted the motion for summary judgment in National's favor.
National claimed in oral argument that its affidavit should be accepted as sufficient to resolve all genuine issues of material fact because Ms. Bolton failed to present any countervailing affidavits or other evidence in opposition to its motion for summary judgment. However, until the party seeking summary judgment has met its burden of proof, the party opposing the motion has no responsibility for presenting countervailing evidence. The burden of proof remains on the mover under the new law. National did not meet its burden of proof. It is not entitled to summary judgment.
Because of our finding on this issue, we pretermit the other issues raised by Ms. Bolton in this portion of the appeal. The trial court judgment granting the motion for summary judgment in favor of National is hereby reversed.

V. Conclusion

For the above and foregoing reasons, the following trial court judgments are reversed: (1) the judgment granting summary judgment in favor of Ms. Bolton; (2) the judgments denying summary judgment in favor of Tulane, State Farm, and Allstate; and (3) the judgment granting summary judgment in favor of National. Additionally, summary judgment is granted in favor of Tulane, Hartford, Ms. Yopp, State Farm, and Allstate; those defendants are hereby dismissed from the suit. The case is remanded for further proceedings on National's liability to Ms. Bolton consistent with this opinion.

REVERSED; RENDERED IN PART; REMANDED IN PART.
ARMSTRONG, J., concurs.

ON APPLICATION FOR REHEARING

CLARIFICATION
PER CURIAM.
We grant rehearing for the sole purpose of clarifying our decision to apply Louisiana's worker's compensation law rather than Mississippi tort law in the instant case. On rehearing, plaintiff Mae Ola Bolton challenges our decision to apply LSA-R.S. 23:1035.1, relative to the extraterritorial application of Louisiana's worker's compensation law, to find that Louisiana law applies; she asserts that we failed to consider Louisiana's "Conflict of Laws" statutes, La. C.C. art. 3515 et seq., which was amended effective 1992.
First, our reading of the applicability of the Conflict of Laws provisions convinces us that we should not apply those statutes to the instant case. La. C.C. art. 3542, the general rule concerning choice of law in delictual and quasi-delictual cases, states that the delictual/quasi-delictual conflict of law provisions apply "[e]xcept as otherwise provided in this Title," meaning Title 7 to Book IV of the Civil Code. Further, La. C.C. art. 3515, the general rule governing conflict of laws in all types of cases, states that the Conflict of Laws statutes apply "[e]xcept as otherwise provided in this Book," meaning Book IV of the Civil Code. Finally, La. C.C. art. 14 provides as follows:
Unless otherwise expressly provided by the law of this state, cases having contacts with other states are governed by the law selected in accordance with the provisions of Book IV of this Code.
Thus, the Conflict of Laws provisions in Book IV of the Civil Code do not apply if other Louisiana laws expressly apply to a given controversy. See S. Symeonides, "Louisiana *1127 Conflicts Law: Two `Surprises,'" 54 La. L.Rev. 497, 527 (1994). In the instant case, LSA-R.S. 23:1035.1 expressly applies. Thus, we are not required to consider the Conflict of Laws statutes.
Second, even if the Conflict of Laws statutes were applicable, Louisiana worker's compensation law would nevertheless be the appropriate law to apply under the facts and circumstances of this case. La. C.C. art. 3542 et seq., relative to delictual and quasi delictural obligations, would govern choice of law in the instant case. Moreover, the specific provision applicable to this case would be La. C.C. art. 3544, relative to issues of loss distribution and financial protection, since this case involves a determination of whether to apply Louisiana worker's compensation law, which is less favorable to Ms. Bolton, or Mississippi tort law, which is more favorable to Ms. Bolton. However, the pertinent portion of La. C.C. art. 3544 specifically provides as follows:
Issues pertaining to loss distribution and financial protection are governed, as between a person injured by an offense or quasi-offense and the person who caused the injury, by the law designated in the following order:
(1) If, at the time of the injury, the injured person and the preson who caused the injury were domiciled in the same state, by the law of that state.
Despite Ms. Bolton's arguments to the contrary, we have no trouble finding that no genuine issue of material fact exist concerning her domicile at the time of the accident; Ms. Bolton was a Louisiana domiciliary. The fact that she grew up in Mississippi, even when coupled with the fact that her parents lived there at the time of the accident, is insufficient to make Ms. Bolton a Mississippi domiciliary. At the time of the accident, she had moved to New Orleans to take a permanent job with Tulane University. Since both Ms. Bolton and the defendants were domiciliaries of Louisiana, Louisiana law applies if La. C.C.P. art. 3544 is the controlling statute.
ARMSTRONG, J., concurs.
NOTES
[1] The record is unclear concerning when Ms. Bolton drove to Jackson, Mississippi. She may have driven up on the evening of Friday, November 5 and stayed in a hotel at the expense of Tulane, or she may have driven up and back on the morning of Saturday, November 6. Either way, Tulane paid all the expenses of the trip.
[2] Ms. Harvey testified by deposition that she sometimes required that both coaches go on a trip which would involve late-night travel. However, that requirement was not imposed in this instance, presumably because of the previous agreement.
[3] National attempted to submit further evidence on this issue in this court; however, since the evidence was not considered by the trial court, we are prohibited from considering it on appeal.