716 So.2d 514 (1998)
Jeffrey HARVEY, Plaintiff-Appellee,
v.
B E & K CONSTRUCTION, Defendant-Appellant.
No. 30825-WCA.
Court of Appeal of Louisiana, Second Circuit.
August 19, 1998.
*516 Taylor, Wellons & Politz, New Orleans by Kelann Etta Larguier, Metairie, for Defendant-Appellant.
C. Daniel Street, Monroe, for Plaintiff-Appellee.
Before NORRIS, BROWN and WILLIAMS, JJ.
BROWN, Judge.
Plaintiff, Jeffrey Harvey, filed a workers' compensation claim against his former employer, defendant, BE & K Construction Company (BE & K), concerning an injury that occurred on March 23, 1994 while Harvey was working in Hopewell, Virginia. The hearing officer found that Louisiana had jurisdiction over the claim and that Harvey was entitled to past and future benefits, medical expenses, penalties and attorney fees. BE & K appeals all issues and Harvey has answered the appeal seeking an increase in attorney fees to cover this appeal. We affirm and award additional attorney fees.

Discussion

Subject Matter Jurisdiction
BE & K first urges error in the hearing officer's determination of subject matter jurisdiction.
Louisiana Workers' Compensation Act. La. R.S. 23:1035.1 provides for jurisdiction as follows:
(1) If an employee, while working outside the territorial limits of this state, suffers an injury on account of which he, or in the event of his death, his dependents, would have been entitled to the benefits provided by this Chapter had such injury occurred within this state, such employee, or in the event of his death resulting from such injury, his dependents, shall be entitled to the benefits provided by this Chapter, provided that at the time of such injury
(a) his employment is principally localized in this state, or
(b) he is working under a contract of hire made in this state.
The record indicates that BE & K does not have its business localized primarily in Louisiana. Therefore, for La. R.S. 23:1035.1 to apply the contract of hire must have been made in this state.
In determining the origin of a contract of hire, the parties' intent should be paramount. Martin v. Southwest Moving & Delivery, 29,892 (La.App.2d Cir. 10/29/97), 701 So.2d 1351; Lakvold v. Stevens Transport, 95-0866 (La.App. 1st. Cir.12/15/95), 665 So.2d 828; Smith v. Liberty Mutual Insurance Co., 473 So.2d 394 (La.App. 3d Cir. 1985). Some factors to consider in determining the intent of the parties include domicile of the parties, the nature of the work to be done, and the place where the employment was initiated. Id.
Harvey, a resident of Jonesboro, Louisiana, had worked for BE & K since 1991. At the time of the injury, Harvey, a boilermaker, was working a "shutdown" job at the Stone Container Plant in Hopewell, Virginia.
A "shutdown" is a job that arises when a papermill has to shut down its boiler for repairs which in turn causes the entire mill to shut down. Prior to the job in Virginia, Harvey was working at a similar job in Mobile, Alabama.
Harvey testified that he spoke to his foreman, Dwayne Thomas, about the Hopewell job before leaving Mobile, but did not get any of the job details and gave no definitive answer. Harvey further testified that it was not until he spoke with Nancy Fisher, the personnel manager for defendant, by telephone from his home in Jonesboro, Louisiana, that he learned the details of the job and accepted it. Finally, he stated that he would not have left his home in Louisiana to drive to Virginia had he not been certain he had a definite job upon his arrival.
Although Ms. Fisher initially testified that the conversation with Harvey occurred while he was in Mobile, she later stated she was not positive of that fact. The hearing officer, given the conflicting testimony, chose to believe *517 Harvey's testimony.[1]
We review the findings of fact by a hearing officer under the "manifest error" standard. Doucet v. Baker Hughes Production Tools, 93-3087 (La. 03/11/94), 635 So.2d 166. The issue is not whether the hearing officer was right or wrong, but whether the factual conclusion was reasonable. Stobart v. State, Through DOTD, 617 So.2d 880 (La. 1993); Stevens v. Wal-Mart Stores, Inc., 27,977 (La.App.2d Cir. 11/01/95), 663 So.2d 543. Mere conflicts in evidence will not suffice to overturn a hearing officer's reasonable evaluations of credibility and reasonable findings of fact. Rosell v. ESCO, 549 So.2d 840 (La. 1989). Thus, where there are two permissible views of the evidence, the fact finder's choice between them cannot be manifestly erroneous or clearly wrong. Stobart, supra; Taylor v. Garrett, 28,729 (La.App.2d Cir.10/30/96), 682 So.2d 831.
The Supreme Court determined in a factually similar situation that an employment contract originated in Louisiana. Ohlhausen v. Sternberg Dredging Co., 218 La. 677, 50 So.2d 803 (1951); reversed on other grounds, 53 So.2d 206 (La.App.1951). In Ohlhausen, the determining factor was the existence of a definitive agreement prior to the plaintiff leaving his home in Louisiana and traveling to another state where a job awaited him.
Following Ohlhausen, this court also found that a contract of employment originated in Louisiana. Jepsen v. B-Con Construction Co., Inc., 475 So.2d 112 (La.App. 2d Cir. 1985). The distinguishing feature between Jepsen and the instant case is that in Jepsen, the paperwork was filled out in Shreveport, Louisiana. However, this court stated that the completion of the paperwork was a formality and was not controlling.
Although Harvey's paperwork, drug test and physical were completed when he arrived on the job site in Virginia, we find that his verbal agreement with defendant controls. Because the evidence supports the hearing officer's factual conclusion that an employment agreement was reached in a telephone conversation with Harvey at his home in Louisiana, we agree that Louisiana's workers' compensation law was applicable.

Entitlement to benefits
BE & K urges that the hearing officer committed manifest error in finding that Harvey was temporarily totally disabled and entitled to benefits from December 17, 1994 to May 15, 1995, and further entitled to supplemental earnings benefits from May 16, 1995. It is BE & K's position that Harvey failed to carry his burden of proving his disability. We find no merit to this assignment.
On March 23, 1994, while he was working in Hopewell handling a heavy target saw in a kneeling position, Harvey's right knee popped out of joint. Harvey reported the injury to his supervisor and was given a drug screen which was negative. He was also required to finish out his shift running an elevator, a light duty activity.
Harvey was taken to a clinic in Hopewell the following day. The doctor who examined Harvey informed him that the injury would require surgery. Harvey testified that his supervisor, ignoring the advice of the physician, purchased over-the-counter pain medication and a brace for Harvey's knee. The following day, Harvey was laid off because of a reduction of force and returned home to Jonesboro, Louisiana.
Harvey did not receive any further medical treatment until June 1994, when he was sent by BE & K to Dr. Frank X. Cline, an orthopaedic surgeon in Monroe, Louisiana.[2] Dr. Cline performed arthroscopic surgery on Harvey's right knee on July 6, 1994. During the surgery Dr. Cline found an extensive tear of the right lateral meniscus which he removed. He also noted a "severe break down of the under surface of the kneecap over almost the entire surface," which he *518 trimmed. He testified that this may or may not have been related to the work injury.
BE & K paid indemnity benefits of $373.33 per week (under Virginia law) from July 6, 1994 to December 14, 1994. Dr. Cline released Harvey to regular work on October 26, 1994. However, Harvey did not feel he was capable of returning to work because of his knee. In fact, while he was visiting a cousin in December 1994, Harvey's knee gave way and he fell, rupturing the biceps tendon in his left arm. He later underwent surgery in Jackson, Mississippi, to reattach the tendon.
A claimant seeking temporary total disability benefits under the workers' compensation act bears the burden of proving by clear and convincing evidence that his injury prevents him from engaging in any employment. La. R.S. 23:1221(1)(c); Vernon v. Wade Correctional Institute, 26,053 (La. App.2d Cir.08/19/94), 642 So.2d 684.[3] To prove a matter by clear and convincing evidence means to demonstrate that the existence of a disputed fact is highly probable, that is, much more probable than its nonexistence. Cleveland v. Delhi Guest Home, 29,506 (La.App.2d Cir.05/07/97), 694 So.2d 607; Hines v. Williams, 567 So.2d 1139 (La.App. 2d Cir.1990), writ denied, 571 So.2d 653 (La. 1990).
The hearing officer noted Dr. Cline's testimony that he expected Harvey's knee to give way from time to time and cause him to fall. The hearing officer went on to say that it was unrefuted that Harvey's knee did in fact give way and cause him to fall and injure his arm in December 1994. BE & K, however, claims that Harvey's instability was not due to the meniscal tear, but a pre-existing condition.
Dr. Cline testified that in fact the knee's instability was due to chondromalacia rather than the meniscal tear. Dr. Ballard also testified that there was no ligamentous instability but a "tremendous amount of chondromalacia of the patella." He further stated that "a significant amount of [Harvey's] problem is with the patella/femoral joint." Neither doctor, however, offered an opinion as to whether this condition was aggravated by or related to the on-the-job accident.
A worker's pre-existing condition does not bar his recovery under the Louisiana workers' compensation statute. Guillory v. U.S. Fidelity & Guaranty Insurance Co., 420 So.2d 119 (La.1982); Guidry v. Serigny, 378 So.2d 938 (La.1979); Roussel v. Colonial Sugars Company, 318 So.2d 37 (La.1975). An employer takes a worker as he finds him and a worker who is more susceptible to injury is entitled to no less protection under the act than a healthy one. Id; Allor v. Belden Corporation, 393 So.2d 1233 (La. 1981).
Where a disability follows an accident without any intervening event, it is presumed that the accident caused the disability. It is not necessary to determine the exact cause of the disability. This presumption is rebuttable. Its effect is to shift the burden of proof to the defendant, who bears the burden of coming forward with sufficient evidence to rebut the presumption. Id.
Contrary to BE & K's argument, Harvey did in fact carry his burden of proving a disabling condition. Dr. Cline testified that *519 "the patella was disrupted almost over the entire surface [ ... ] and in some cases was down to bleeding bone which would indicate to me that he was going to have some further trouble with his kneecap in the future." Dr. Ballard's testimony confirmed this opinion. Thus, shortly following the accident, Harvey's disability manifested itself and there were no intervening causes. At this point it became BE & K's burden to rebut the presumption of causation. BE & K failed to produce any evidence to the contrary. The hearing officer's conclusion of causation and disability is accorded great weight. Vernon, supra. Under these circumstances, the ruling was not manifestly erroneous.
Harvey further produced pay stubs to show that he did attempt to work after Dr. Ballard released him in May 1995. However, he was unable to earn 90% of his pre-injury wages due to his knee's instability and was therefore entitled to supplemental earnings benefits. See La. R.S. 23:1221(3). Again, BE & K produced no evidence in contradiction of this fact. The hearing officer's decision to award SEBs was not clearly wrong.
The amount of the benefits was not questioned and will therefore not be addressed.

Penalties and attorney fees
Determination of whether an employer should be cast with penalties and attorney fees in a workers' compensation action is essentially a question of fact and the trial court's finding should not be disturbed on appeal absent manifest error. Oliveaux v. Riverside Nursing Home, 29,419 (La.App.2d Cir.04/02/97), 691 So.2d 340; Smith v. Tudor Construction, 25,783 (La.App.2d Cir.05/04/94), 637 So.2d 666. Whether the refusal to pay workers' compensation benefits is arbitrary, capricious, or without probable cause, depends primarily on the facts known to the employer at time of its refusal. La. R.S. 23:1201.2.; Beddes v. Qwik Pantry, 29,657 (La.App.2d Cir.06/18/97), 697 So.2d 695.
The hearing officer determined that Harvey was entitled to penalties and attorney fees for BE & K's failure to provide the medical treatment initially recommended for Harvey while he was in Virginia and for their refusal to pay supplemental earnings benefits. In both instances Harvey presented evidence in support of his position. BE & K presented no evidence to show a legitimate contravention of Harvey's claim. Therefore, the hearing officer did not err in awarding penalties and attorney fees.
If plaintiff requests an increase in attorney fees, it is usually awarded when defendant appeals, obtains no relief, and the appeal necessitates additional work by plaintiff's counsel. Smith, supra. Harvey made such a request, and we accordingly award additional attorney fees of $1,500.

Conclusion
For the foregoing reasons:
IT IS ORDERED, ADJUDGED and DECREED that the award of the workers' compensation hearing officer against BE & K Construction Co., Inc., and in favor of Jeffrey Harvey, is affirmed.
IT IS FURTHER ORDERED, ADJUDGED and DECREED that additional attorney fees in the amount of $1,500 be awarded in favor of Jeffrey Harvey and against BE & K Construction Company. All costs of this appeal are assessed to BE & K Construction Company.
NOTES
[1] BE & K filed an application for supervisory writs to this court on April 12, 1996. This court declined to consider the writ as it was not timely filed.
[2] Harvey testified that he had worked on another job for another employer during that time, but was unable to complete his duties due to his knee. It was because of this that he finally sought medical treatment through BE & K.
[3] La. R.S. 23:1221:

Compensation shall be paid under this Chapter in accordance with the following schedule of payments:
(1) Temporary total.
(a) For any injury producing temporary total disability of an employee to engage in any selfemployment or occupation for wages, whether or not the same or a similar occupation as that in which the employee was customarily engaged when injured, and whether or not an occupation for which the employee at the time of injury was particularly fitted by reason of education, training, or experience, sixty-six and two-thirds percent of wages during the period of such disability.
....
(c) For purposes of Subparagraph (1)(a) of this Paragraph, whenever the employee is not engaged in any employment or self-employment as described in Subparagraph (1)(b) of this Paragraph, compensation for temporary total disability shall be awarded only if the employee proves by clear and convincing evidence, unaided by any presumption of disability, that the employee is physically unable to engage in any employment or self-employment, regardless of the nature or character of the employment or selfemployment, including but not limited to any and all odd-lot employment, sheltered employment, or employment while working in any pain, notwithstanding the location or availability of any such employment or self-employment.