665 So.2d 672 (1995)
Michael E. TUCKER, et ux, Plaintiffs-Appellants,
v.
NORTHEAST LOUISIANA TREE SERVICE, et al., Defendants-Appellees.
No. 27768-CA.
Court of Appeal of Louisiana, Second Circuit.
December 6, 1995.
Writ Denied March 8, 1996.
*674 Richard R. Storms, Ruston, for Appellants.
Hayes, Harkey, Smith & Cascio, L.L.P. by John B. Saye, Monroe, for Appellee H. Michael Bryan.
Haik & Minvielle by Julius W. Grubbs, Jr., New Iberia, for Appellee Pinnacle Insurance Co.
Lunn, Irion, Johnson, Salley & Carlisle by Julia A. Mann, Shreveport, for Appellee Northeast Louisiana Tree Service and Fidelity & Casualty of New York.
Before WILLIAMS, J., and PRICE and CLARK, JJ. Pro Tem.
CLARK, Judge Pro Tem.
This suit arises from injuries sustained by Michael E. Tucker when his employer/supervisor slammed on the brakes of a company van, in which Tucker was occupying a seat that was not bolted down. Tucker complains of the following actions by the trial court: (1) its granting of a motion for summary judgment in favor of his employer's commercial auto liability insurance carrier; (2) its granting of an exception of lack of subject matter jurisdiction filed by the employer and its worker's compensation insurer; (3) its granting of an exception of no right of action by the employer/supervisor directly responsible for his injury; and (4) its denial of Tucker's motion for summary judgment. For the reasons assigned below, we reverse the trial court judgment granting the exceptions and the insurance carrier's motion for summary judgment. We affirm the trial court judgment denying Tucker's motion for summary judgment and remand the case to the trial court for further proceedings.

FACTS
On December 18, 1992, Tucker was employed by Northeast Louisiana Tree Service (NLTS), which was cutting trees at a site near Georgetown, Louisiana. Tucker rode to lunch from the job site in a company van driven by Michael Bryan, one of the owners of NLTS and Tucker's supervisor. After lunch, Bryan was informed that he needed to purchase some oil for one of the company vehicles, and he undertook that task before returning to the job site.
*675 According to Tucker, Bryan applied the brakes with great force, as a "practical joke," knowing that Tucker's seat was not bolted to the floor. However, Bryan testified in his deposition that Tucker was throwing bottle caps at the other van occupants and that Bryan slammed on the brakes only after being hit in the face by one of the bottle caps and veering into the other lane of traffic. The sudden stop caused Tucker to hit his head on a steel rack separating the rear portion of the van from the two front seats. He sustained head injuries and facial fractures.
Tucker and his wife filed an intentional tort suit for battery against NLTS, Pinnacle Insurance Company (NLTS' commercial auto liability insurance carrier), and Michael Bryan.
Pinnacle filed a motion for summary judgment on the grounds that its policy excluded coverage for injuries compensable under worker's compensation law. These exclusions are as follows:
SECTION IILIABILITY COVERAGE(B) EXCLUSIONS
This insurance does not apply to any of the following:
(1) EXPECTED OR INTENDED INJURY"Bodily injury" or "property damage" expected or intended from the standpoint of the "insured."
* * * * * *
(3) WORKERS' COMPENSATIONAny obligation for which the "insured" or the "insured's" insurer may be held liable under any workers' compensation, disability benefits or unemployment compensation law or any similar law.
(4) EMPLOYEE INDEMNIFICATION AND EMPLOYER'S LIABILITY"Bodily injury" to: (a.) An employee of the "insured" arising out of and in the course of employment by the "insured";
(5) FELLOW EMPLOYEE"Bodily injury" to any fellow employee of the "insured" arising out of and in the course of the fellow employee's employment.
NLTS and its worker's compensation insurer, Fidelity & Casualty of New York, filed an exception of subject matter jurisdiction, arguing that worker's compensation was Tucker's exclusive remedy.[1] Bryan filed a similar exception.[2]
While these matters were under advisement, Tucker filed a motion for summary judgment. He requested that the trial court find that the employer had no tort immunity and that the employer's liability insurer provided coverage. In an affidavit filed in November 1994, Tucker stated that Fidelity had terminated the worker's compensation benefits he had been receiving since the accident on the basis that he was not in the course of his employment when he was injured.
In September 1994, the trial court granted Pinnacle's motion for summary judgment, as well as Bryan's exception of no cause/right of action and NLTS and Fidelity's exception of subject matter jurisdiction. Among other things, the trial court specifically held that, while the deposition evidence differed as to why Bryan applied his brakes, none of the evidence demonstrated an intention to harm Tucker. In a separate opinion rendered in January 1995, the trial court denied Tucker's motion for summary judgment, which the court interpreted as a request to reconsider the other rulings.
Tucker appealed.

MATTERS APPEALED
The first issue we must resolve is which of the trial court's rulings were appealed by Tucker.
On September 21, 1994, the trial court issued its written opinion on Pinnacle's motion for summary judgment, Bryan's exception, and NLTS and Fidelity's exception. A judgment in conformity with these rulings was signed on February 16, 1995. On January 12, 1995, the trial court issued a written *676 opinion addressing Tucker's motion for summary judgment, and a separate judgment denying that motion was signed, also on February 16, 1995.
Tucker's petition and order for appeal refer only to "the final judgment on defendants' motion for summary judgment rendered by opinion of this Court on September 21, 1994 and judgment signed in accordance with said opinion dated the 16th day of February, 1995, and ... the final judgment rendered by opinion on [plaintiffs'] motion for summary judgment, said opinion being dated the 12th day of January, 1995, and final judgment having been signed on the 16th day of February, 1995."
Since Tucker specifically referred only to the motions for summary judgment in his petition and order for appeal, Bryan, and NLTS and Fidelity argue that Tucker did not properly appeal from the trial court's rulings on their exceptions.
However, the notice of appeal sent to counsel for all parties by the clerk of court of the Fourth Judicial District Court stated:
Notice is hereby given that on February 24, 1995 upon motion of Michael E. Tucker, Jr., et ux, plaintiff through Richard R. Storms, attorney an order of appeal was entered on February 24, 1995 granting an appeal from the judgment of February 16, 1995, returnable to the Court of Appeal, 2nd Circuit, on April 21, 1995. [Emphasis added.]
Additionally, we note that it was readily apparent in the appellant's original appeal brief that he intended to appeal the trial court's rulings on all four of the motions and exceptions.
Appeals are favored in the law and should not be dismissed unless the law clearly requires a dismissal. Thurman v. Star Electric Supply, Inc., 283 So.2d 212 (La. 1973). An appeal is not to be dismissed for a mere technicality. U.S. Fire Insurance Company v. Swann, 424 So.2d 240 (La.1982). Unless the ground urged for dismissal is free from doubt, the appeal should be maintained. Swann, supra.
Appeals have been maintained in varying circumstances when it was apparent that the technical error was inadvertent. See Swann, supra; Fuqua v. Gulf Insurance Company, 525 So.2d 190 (La.App. 3d Cir.1988); Weston v. Raymond Corporation, 531 So.2d 528 (La. App. 5th Cir.1988), writ denied, 533 So.2d 360 (La.1988); Ellias v. Ellias, 94-1049 (La.App. 3d Cir.3/1/95), 651 So.2d 939, writ denied, 95-0832 (La.5/5/95), 654 So.2d 333. However, see Roche v. Big Moose Oilfield Truck Services, Inc., 371 So.2d 1374 (La.App. 3d Cir. 1979), modified, 381 So.2d 396 (La.1980).[3]
Therefore, since the law so strongly favors allowing appeals, we will consider the trial court's rulings on the two exceptions, in addition to the motions for summary judgment.

IN COURSE OF AND ARISING OUT OF EMPLOYMENT
Tucker argues that the trial court erred in concluding that worker's compensation was Tucker's exclusive remedy. In so holding, the trial court found that, at the time of the accident, Tucker was in the course of his employment and that the accident arose out of his employment. The trial court also found that there was no evidence of an intentional act by the employer which would remove Tucker's claims from the realm of worker's compensation.
The employer is responsible for compensation benefits to an employee who is injured by an accident which occurs in the course of the employment and arises out of the employment. LSA-R.S. 23:1031. Generally, compensation benefits are the employee's exclusive remedy against his employer for such an injury. LSA-R.S. 23:1032. An exception to this rule provides that nothing therein shall affect the liability of the employer, *677 principal, officer, co-employee resulting from an "intentional act." LSA-R.S. 23:1032(B). When the employer seeks to avail itself of tort immunity under Section 1032, the employer has the burden of proving entitlement to immunity. Mundy v. Department of Health and Human Resources, 593 So.2d 346 (La.1992).
An accident occurs in the course of employment when the employee sustains an injury while actively engaged in the performance of his duties during working hours, either on the employer's premises or at other places where employment activities take the employee. Kern v. Southport Mill, 174 La. 432, 141 So. 19 (1932); Mundy, supra. While coverage has been extended in some cases to include accidents during times for rest or lunch periods or before and after work on the employer's premises, or to include accidents at places where employment duties are performed off the employer's premises, the principal criteria for determining course of employment are time, place and employment activity. Mundy, supra.
The determination of whether an accident arises out of employment focuses on the character or source of the risk which gives rise to the injury and on the relationship of the risk to the nature of the employment. An accident arises out of employment if the risk from which the injury resulted was greater for the employee than for a person not engaged in the employment. Mundy, supra.
The "course of employment" and "arising out of employment" requirements are not viewed as separate and unrelated concepts. Rather, there is a mutual interdependence of the two concepts in determining the relationship of the injury to the employment. In a close case a strong showing of "course of employment" has been held to counterbalance a relatively weak showing of "arising out of employment." Mundy, supra.
Generally, an accident which occurs while an employee is going to or coming from work does not occur in the course and scope of employment. Hebert v. Jeffrey, 94-1230 (La.App. 1st Cir.4/7/95), 653 So.2d 842. Also, as a general rule, an employee is not within the course and scope of employment while going to and from lunch. Hill v. West American Insurance Company, 93-915 (La.App. 3 Cir.3/2/94), 635 So.2d 1165, writ denied, 94-1630 (La.9/30/94), 642 So.2d 881. However, exceptions to these rules are recognized where the employer has furnished transportation as an incident to the employment agreement, either through a vehicle or payment of expenses, and where wages are paid for the time spent in traveling. Hill v. West American Insurance Company, supra; Hebert v. Jeffrey, supra.
Malone and Johnson, Louisiana Civil Law Treatise, Worker's Compensation, Sec. 170, at 392 (1994), discussed transportation as an incident of employment:
Whatever the manner in which the employer might have interested himself in the transportation of the employee, the transportation must be an incident of the contract of hiring. The fact that the employer occasionally provides transportation to accommodate an employee is not enough to bring the situation within the exception to the general rule that trips to and from the place of work are outside the course of employment. This distinction between transportation furnished as an occasional convenience and transportation supplied as a part of the employer's undertaking has given rise to much confusion. In view of the informal character of hiring agreements, the undertaking to provide transportation must usually be implied from the circumstances. For this reason, the fact that there is a prevailing practice of carrying employees back and forth is important, and the fact that such trips have been made only infrequently or irregularly has been regarded as an indication that the arrangement is one of accommodation only. [Footnotes omitted.]
Two recent cases have considered this troublesome area of the law. In Hill v. West American Insurance Company, supra, a grass-cutting crew was transported to a remote job site by company vehicles. Three employees later took one of the company vehicles to go to lunch at a store several miles down the road. An accident occurred *678 when the employee/driver lost control of the vehicle, and one of the other employees was seriously injured. The injured employee filed a tort suit against the employer's liability insurer; she also made a worker's compensation claim against the employer. The employer's insurer claimed immunity from the tort suit, asserting that worker's compensation was the injured employee's exclusive remedy. The trial court denied the insurer's motion for summary judgment while granting summary judgment in favor of the injured employee on the basis that she had not been in the course and scope of her employment at the time of the accident. The appellate court affirmed. Among the reasons given by the appellate court for its decision was the fact that the accident occurred at a place not contemplated by the employment, but at a spot several miles from the work site while the employee was on a personal mission to get lunch. Also, the court found that the employer did not provide transportation as part of the employment agreement nor did it require employees to ride in the company vehicles. The use of the company vehicle to get lunch was personal, not an incident to the employment, and not in furtherance of the employer's business. The court concluded that the company provided the vehicle as a courtesy only.
Another recent case addressing similar circumstances is Hebert v. Jeffrey, supra.[4] An employee, Hebert, was injured while riding as the guest passenger of his supervisor, Granier, in a company vehicle while en route to a job site. The employer, Petrin Corporation, did not normally supply transportation for its employees. However, it would supply transportation if they were going to a job in a new and unfamiliar geographic area. On the morning of the accident, the employees met at a predetermined location to follow each other to a new job site. Granier, their supervisor, offered to drive to insure that no one would get lost and that they would all arrive at the same time. However, the employees were not required to ride with him. Hebert filed a tort suit against several individuals, including Granier and the employer's automobile liability insurer. On appeal, the court was required to determine de novo whether Hebert was in the course and scope of his employment at the time of the accident. It concluded that he was not, stating as follows:
We find that Granier gratuitously offered to drive the other Petrin employees to the jobsite. It was an unplanned offer, the acceptance of which was not required by Petrin of its employees. Furthermore, Hebert was not paid for his travel time on that day. This incidental occasion on which transportation was provided to Hebert was insufficient to place Hebert in the course and scope of his employment at the time of the accident.
In both of these cases, the courts decided that the transportation was an accommodation offered to the employee gratuitously. We find that the same is true in the instant case.
The evidence showed that NLTS did not pay its employees for lunch time. During the lunch break, employees were unsupervised and free to do whatever they wished, including sleep. In his deposition, Bryan testified that the company would normally provide the employees with transportation from the office to the job site. However, he also testified that an employee could take his own vehicle for "good reasons." Among the reasons he cited were having a doctor's appointment, needing to leave at a certain time, or simply not wanting to ride in the back of a pick-up truck. Bryan stated, "At different times we have people take their own vehicles but most of the time I would prefer them, if we were going to the same place and coming back the same time, to ride in the company vehicle because we pay from the time they leave to the time they get back except for lunch.... [Emphasis added.]"
On the day of the accident, Bryan and a crew including Tucker were working at a site near Georgetown. At lunch time, Bryan asked if anyone wanted to get some lunch at *679 a nearby store and invited those who did to ride with him. Tucker and two other employees accepted his invitation. As they were leaving the store after lunch, Bryan was informed that a piece of equipment required some oil. At the time of the accident, Bryan was en route to another store to purchase the oil.
Bryan's invitation to take Tucker and the other employees to lunch was a gratuitous offer, the acceptance of which was not required. It was not in furtherance of the employer's business, but an accommodation. While Bryan may have been on a workrelated mission at the time of the accident, the employees with him were simply "along for the ride." Their presence in the van at that place and at that time did nothing to further the employer's interests. The risk giving rise to the injury was not greater for Tucker than for a person not so employed.
Therefore, based on the evidence submitted on the exceptions and motions, we find that Tucker was not in the course of his employment when the accident occurred.

BRYAN'S INTENT
We must next consider the issue of Bryan's intent in slamming on the brakes. Tucker contends that he should be allowed to pursue a tort claim because he was injured by an intentional act of his employer. Although we have already concluded that Tucker was not in the course of his employment and consequently not covered by worker's compensation, the matter remains relevant because, in Pinnacle's motion for summary judgment, Pinnacle asserts an exclusion based on intentional injury.
Appellate courts review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. Schroeder v. Board of Supervisors of Louisiana State University, 591 So.2d 342 (La.1991).
The moving party on summary judgment has the burden of proving that there are no genuine issues of material fact and that the mover is entitled to judgment as a matter of law. LSA-C.C.P.Art. 966. Also, an insurer who raises a defense based on exclusionary language in its policy has the burden of proof. Garcia v. St. Bernard Parish School Board, 576 So.2d 975 (La.1991); Hill, supra.
A motion for summary judgment is not suitable for disposition of cases requiring a judicial determination of subjective facts such as motive, intent or knowledge. Coleman v. Sheraton Pierremont, 25452 (La. App. 2d Cir.1/19/94), 631 So.2d 50. When affidavits and exhibits present a choice of reasonable inferences, reasonable inferences must be viewed in the light most favorable to the party opposing the summary judgment. Coleman, supra. Credibility determinations have no place in a summary judgment procedure. Coleman, supra.
The evidence in the record is such that the issue of Bryan's intent cannot be resolved on summary judgment. Bryan testified in his deposition that he slammed on the brakes to avoid an accident after he was struck in the face by a bottle cap thrown by Tucker. To the contrary, Tucker testified that Bryan slammed on the brakes as a "joke" to cause Tucker's unsecured chair to slide. This is a matter which must be resolved at trial.[5]

EXCEPTIONS
Based on the evidence presented on the exceptions, we find that Tucker was not in the course of his employment at the time of the accident and consequently not covered by worker's compensation. Thus, we reverse the trial court's granting of the exceptions filed by Bryan and by NLTS and its worker's compensation insurer.

MOTIONS FOR SUMMARY JUDGMENT
Of the policy exclusions claimed by Pinnacle and quoted previously in this opinion, Exclusions (3), (4), and (5) are not applicable because, based on the evidence presented on the motion for summary judgment, we conclude Tucker was not in the course of *680 his employment and not covered by worker's compensation. As to Exclusion (1), which concerns an intentional injury, this matter cannot be resolved on summary judgment. Since Pinnacle was unsuccessful in proving that one of its exceptions to coverage under its policy was applicable, we reverse the trial court's granting of Pinnacle's motion for summary judgment.
However, because the issue of intentional injury cannot be resolved on summary judgment, we find that Tucker is not entitled to summary judgment holding that the Pinnacle exclusionary language is inapplicable. Therefore, we affirm the trial court judgment denying Tucker's motion for summary judgment.

CONCLUSION
Based on the foregoing, we reverse the trial court judgment which granted the exceptions and Pinnacle's motion for summary judgment. We affirm the trial court judgment denying Tucker's motion for summary judgment. The matter is remanded to the trial court for further proceedings.
Costs are assessed equally between the plaintiffs, Michael Bryan, Pinnacle Insurance Company, and Northeast Louisiana Tree Service.
JUDGMENT ON EXCEPTIONS AND PINNACLE'S MOTION FOR SUMMARY JUDGMENT REVERSED. JUDGMENT ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AFFIRMED.
NOTES
[1] Fidelity & Casualty of New York was not named as a defendant.
[2] Although the two exceptions were essentially the same, the trial court referred to the one filed by NLTS and Fidelity as an exception of lack of subject matter jurisdiction and the one filed by Bryan as an exception of no right/cause of action.
[3] In Roche, the appellate court limited an appeal where the appellant's motion and order of appeal only specified one of two separate judgments dealing with different defendants, finding that there must be "certainty and definiteness" as to what judgment was being appealed due to the important rights being affected. However, the Supreme Court declared this "holding" was unnecessary to the resolution of the case and refused to consider the procedural matter. Roche, 381 So.2d at 398, n. 1.
[4] The trial court considered and distinguished the Hill case in its detailed written reasons for judgment; however, when it ruled, it did not have the benefit of the Hebert case (which, in conjunction with the Hill case, we find persuasive).
[5] Because a determination of Bryan's intent requires trial on the merits, we note that the question of "intentional act" under LSA-R.S. 23:1032(B) was also not amenable to resolution on summary judgment or by the exceptions.