729 So.2d 1160 (1999)
Sadie Savoie LORRAINE, Donald Lorraine, Rhonda Lorraine Danos, and Ramona Lorraine
v.
NOLTY J. THERIOT, INC., Boston Old Colony Ins. Company, St. Paul Ins. Co., XYZ Protective and Indemnity Company and Joseph B. Aucoin.
No. 98 CA 0479.
Court of Appeal of Louisiana, First Circuit.
April 1, 1999.
Harvey J. Lewis, Douglass V. Freret, II, David A. Abramson, New Orleans, for Plaintiffs/Appellants Sadie Savoie Lorraine, et al.
Laurence E. Best, R. Jeffrey Bridger, Peter S. Koeppel, New Orleans, for Defendant & Third Party Defendant/Appellee Fidelity & Casualty Company of New York.
J. Michael Grimley, Jr., New Orleans, for Defendant & Cross-Defendant/Appellee St. Paul Insurance Company.
Before: CARTER, C.J., SHORTESS, and PETTIGREW, JJ.
CARTER, C.J.
This suit arises out of a fatal automobile accident. Defendants/appellees, Fidelity and Casualty Company of New York (Fidelity) and St. Paul Insurance Company (St.Paul), insured the automobile in which decedent, Ronald Lorraine (Lorraine), was riding at the time of the accident. The trial court granted defendants/appellees' motions for summary judgment on the issue of insurance *1161 coverage, based on exclusions in appellees' policies for injury sustained by an employee in the course and scope of his employment. Plaintiffs, the heirs of Lorraine, appeal the trial court's judgment.

BACKGROUND
Lorraine was hired by Nolty J. Theriot, Inc. (Nolty) in September 1991. Nolty had an office/warehouse in Golden Meadow, Louisiana. At the time Lorraine was hired, Nolty had discontinued its practice of maintaining written contracts between Nolty and its employees. However, it was common practice to provide transportation for the employees between the Golden Meadow office/warehouse and the work sites. Nolty owned a Suburban which was used to transport equipment and supplies, as well as crew members, from the office/warehouse in Golden Meadow to the various vessels on which the crew members were assigned to work. Fidelity was the primary automobile insurer of the Suburban, and St. Paul provided an excess automobile insurance policy on the Suburban.

FACTUAL AND PROCEDURAL HISTORY
On January 22, 1992, the date of the accident, Lorraine met some fellow crew members at the Golden Meadow office/warehouse so that he could ride in the company Suburban to Port Arthur, Texas, the place where he would board the M/V MITZI ALARIO (the vessel). By the time Lorraine arrived at the office, the Suburban had already been loaded with supplies and tools that would be used by the crew on the vessel. A co-employee, Ernest LeBoeuf, drove the Suburban from the office in Golden Meadow to the house of the vessel's captain, Joseph Aucoin. Upon arriving at Captain Aucoin's house, Captain Aucoin took over the task of driving the Suburban.
On the way to Port Arthur, Texas, just before reaching the Louisiana/Texas border on I-10, Captain Aucoin either fell asleep or experienced a blowout of one of the tires and lost control of the Suburban. In the accident, Captain Aucoin, LeBoeuf and another co-employee were injured. Lorraine was killed.
Plaintiffs filed suit in the Seventeenth Judicial District Court against Nolty, its maritime protection and indemnity (P & I) insurer, Fidelity,[1] St. Paul, and Captain Aucoin. Plaintiffs eventually settled with Nolty and its P & I insurer, and agreed to jointly pursue and share any proceeds either of them could recover from Fidelity and St. Paul.
Plaintiffs subsequently filed a motion for partial summary judgment on the issues of insurance coverage with Fidelity and St. Paul, and Nolty's liability for the accident. Fidelity and St. Paul filed cross motions for summary judgment on the issue of insurance coverage. The insurance policies at issue excluded coverage for bodily injury to an employee arising out of and in the course of employment. The trial court made the following findings of fact, which facts are not disputed by the parties:
Lorraine was an employee of Nolty on the date of the accident.
Aucoin was an employee of Nolty on the date of the accident.
Nolty owned the Suburban involved in the subject accident.
Fidelity insured the subject Suburban on the date of the accident.
St. Paul provided excess automobile liability insurance to Nolty on the subject Suburban on the date of the accident.
The Fidelity and St. Paul policies had exclusions for injury of employees arising out of and in the course and scope of employment by Nolty.
Aucoin was driving the Suburban on the date of the accident with Nolty's permission.
Lorraine was riding in the Suburban on the date of the accident.
Lorraine was traveling from the Golden Meadow office to the work site at Port Arthur, Texas on the date of the accident.
*1162 Lorraine was going to Port Arthur to begin work as a crew member on the M/V MITZI ALARIO, which was owned by Nolty.
Lorraine did not drive the Suburban on the date of the accident; and he did not load supplies or equipment into the Suburban on the date of the accident.
Aucoin was driving when the accident occurred. Lorraine was killed in the accident.
Lorraine was not required by Nolty to ride in the Suburban from Golden Meadow to Port Arthur.
Lorraine was not paid for travel time from Golden Meadow to Port Arthur.
Lorraine was not paid wages until arrival and commencement of work aboard the M/V MITZI ALARIO.
Lorraine made only three crew changes during his employment with Nolty, during one of which he rode with his wife to the job site in their personal vehicle. He was not paid for his travel time or travel expenses for the trip made with his wife.
On the two other crew changes, Lorraine traveled to the work site in a company vehicle.
The trial court initially denied summary judgment because the parties alluded to a written contract between Nolty and Lorraine, but there was no written contract in the record. After more discovery, which revealed that there was no written contract between Nolty and Lorraine, the parties refiled their summary judgments. The trial court made the same findings of fact and additionally found that although there was no written contract, there was a clear prevailing practice of Nolty to transport employees back and forth between work sites and the Golden Meadow office/warehouse. The court concluded that Nolty had interested itself in the transportation of Lorraine as an incident of the employment agreement by contractually providing transportation. Thus, Lorraine was in the course and scope of employment when the accident occurred and coverage under the Fidelity and St. Paul insurance policies was excluded.
Plaintiffs appeal the trial court judgment asserting the trial court erred in finding Lorraine was in the course and scope of his employment on the date of the accident where 1) he was not required to ride in the company vehicle; 2) he was not given travel allowance; 3) he was not paid wages for travel time; 4) he had no written contract requiring his employer to provide transportation; 5) he performed no work in the company vehicle; 6) his duties and wages did not begin until he started work on a vessel; and 7) he was killed riding in a company vehicle en route to his first tour of duty aboard this particular vessel, the M/V MITZI ALARIO.
Fidelity and St. Paul argue in their brief that the judgment of the trial court should be affirmed because Lorraine was in the course and scope of his employment at the time of the accident. Further, they assert the defense of collateral estoppel and the peremptory exception raising the objection of res judicata because of a federal court judgment rendered in litigation involving some of the other occupants of the Suburban who were injured in the accident. In that federal litigation, the judge found that the other Nolty employees riding in the Suburban at the time of the accident, namely, LeBoeuf and Captain Aucoin, were in the course and scope of their employment. Accordingly, appellees urge this court to give the course and scope of employment findings in the federal litigation preclusive effect in the subject appeal.

MOTION FOR SUMMARY JUDGMENT
A motion for summary judgment is a procedural device used to avoid a full scale trial when there is no genuine factual dispute. The motion should be granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, show that there is no genuine issue as to material fact and that mover is entitled to judgment as a matter of law. The summary judgment procedure is favored and is designed to secure the just, speedy, and inexpensive determination of every action. LSA-C.C.P. art. 966. Rambo v. Walker, 96-2538, pp. 4-5 (La.App. 1st Cir.11/7/97), 704 So.2d 30, 32.
The burden of proof is on the movant. However, if the movant will not bear the *1163 burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action or defense. Thereafter, if the adverse party fails to provide factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact. LSA-C.C.P. art. 966C(2). Harrison v. Shipp, 98-0021, pp. 5-6 (La.App. 1st Cir.12/28/98), 724 So.2d 864, 866.
Appellate courts are to review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. Because it is the applicable substantive law that determines materiality, whether or not a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. Rambo, 704 So.2d at 32-33.

COURSE AND SCOPE OF EMPLOYMENT
The facts are not in dispute. Therefore, we will review the applicable law and apply it to the undisputed facts to determine if the trial court erred in finding that Lorraine was acting in the course and scope of his employment at the time of the accident.
Generally, accidents which occur while an employee is traveling to and from work are not considered as having occurred during the course of employment. This rule is premised on the theory that ordinarily, the employment relationship is suspended from the time the employee leaves his work to go home until he resumes his work. However, this rule has been subject to a number of jurisprudentially established exceptions. Brown v. Coastal Construction and Engineering, Inc., 96-2705, p. 3 (La.App. 1st Cir.11/7/97), 704 So.2d 8, 10. One such exception is recognized where transportation is furnished as an incident of employment either through a vehicle, a conveyance and driver, or payment of expenses. Michaleski v. Western Preferred Casualty Company, 472 So.2d 18, 20 (La.1985); see Brown, 704 So.2d at 10.
In finding that Lorraine was in the course and scope of his employment at the time of the accident, the trial court concluded that Nolty had interested itself in Lorraine's transportation as an incident to the employment by contractually providing transportation between its office/warehouse in Golden Meadow and the vessel boarding sites. Despite the absence of a written contract between Lorraine and Nolty obligating Nolty to provide transportation between the Golden Meadow office/warehouse and the vessel boarding sites, the facts clearly demonstrate that it was the common practice of Nolty to provide this transportation to all of its employees such as Lorraine. We agree with the trial court that the exception to the general rule should apply to this case. Therefore, we find that once Lorraine boarded the Nolty Suburban at the office in Golden Meadow for the purpose of traveling to the vessel boarding site, he was in the course and scope of his employment with Nolty.
This finding is supported by the testimony of Ashton Cheramie, the personnel manager for Nolty at the time of the accident. Cheramie testified that since at least 1976, Nolty had provided transportation for its employees from the Golden Meadow office/warehouse to the job sites. According to Cheramie's testimony, there was no written employment contract between Nolty and Lorraine at the time Lorraine was hired because there had been a downturn in oilfield activity, and Nolty had quit using written employment documents. However, according to Cheramie, the terms of Lorraine's employment, specifically regarding Nolty's provision of transportation, were the same as those contained in the written employment documents which pertained to LeBoeuf, who had been a Nolty employee since at least 1979. Cheramie clearly stated that it was Nolty's established policy to furnish transportation to the employees from the Golden Meadow office/warehouse to the job site. Therefore, we find Nolty interested itself in Lorraine's transportation *1164 as an incident of the employment agreement with Lorraine by providing transportation between the Golden Meadow office/warehouse and the vessel boarding sites. As this accident occurred while Lorraine was taking advantage of Nolty's providing transportation between the Golden Meadow office/warehouse and Port Arthur, Texas, the vessel boarding site, he was in the course and scope of his employment.
In reaching this conclusion, we are aware of plaintiffs' reliance on Hebert v. Jeffrey, 94-1230 (La.App. 1st Cir.4/7/95), 653 So.2d 842, to argue that Lorraine was not in the course and scope of his employment because he was not being paid wages for his time spent in travel. Lorraine relies on the following language in the Hebert case: "Exceptions to the rule [that an employee is not in the course and scope of his employment while traveling to and from work] are recognized where the employer has furnished transportation as an incident to the employment agreement, either through a vehicle or payment of expenses, and where wages are paid for the time spent in traveling." Hebert, 653 So.2d at 844 (emphasis added).
We note the Hebert court cited Castille v. Sibille, 342 So.2d 279 (La.App. 3rd Cir.1977), to support this principle of law. However, in Castille, the court stated "[t]he courts have held employees entitled to workmen's compensation in those cases in which the employer had concerned himself with the transportation of his employeeshe has furnished transportation; and/or the employee is furnished travel expenses or is paid wages for time spent in traveling." Castille, 342 So.2d at 281 (emphasis added) (citations omitted). Thus, it appears that the Hebert court omitted the "or" from the principle of law regarding the applicability of the exception for an employer providing transportation as an incident to the employment agreement. We do not find this omission relevant. The statement of this principle of law in Hebert was dicta because it was not necessary to a resolution of the case. In Hebert, the court found that the employees were required to provide their own transportation to work, were not given any travel expenses and were not paid for travel time. Hebert, 653 So.2d at 844-45. Therefore, the Hebert court did not have to address whether or not each prong of its cited "conjunctive" test had to be met because it found that neither prong was met. Accordingly, we do not find that Hebert requires us to reverse the trial court's finding that Lorraine was in the course and scope of his employment at the time of the accident.
Finally, we note that the employer-provided transportation exception as stated in Michaleski, a Louisiana Supreme Court case, does not require the employee to receive wage payment for travel time. See Michaleski, 472 So.2d at 20.
Because we find that that the trial court was correct in finding Lorraine was in the course and scope of his employment and accordingly, insurance coverage was excluded by the plain language of the two insurance policies,[2] we need not address the issues of res judicata and collateral estoppel raised by the appellees.

CONCLUSION
For these reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to appellants.
AFFIRMED.
SHORTESS, J., concurs.
NOTES
[1] In the original petition, plaintiffs named Boston Old Colony Insurance Company as the insurer of the Suburban. In a subsequently filed joint motion to substitute defendants, Fidelity was substituted for Boston Old Colony Insurance Company.
[2] Plaintiffs have disputed only the trial court's finding that Lorraine was in the course and scope of his employment at the time of the accident. They do not dispute the applicability of the exclusions if Lorraine was properly found to have been in the course and scope of his employment.