IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 00-30651

Summary Calendar
_____


ROBERT HAGERTY

Plaintiff - Appellant

v.

KEVIN JOSEPH VAN DUSER; ET AL

Defendants

KEVIN JOSEPH VAN DUSER; PATHFINDER INSURANCE COMPANY; TIG
HOLDINGS GROUP, doing business as TIG Insurance Company,
doing business as TIG Insurance Company of New York

Defendants - Appellees

_____

Appeal from the United States District Court
for the Eastern District of Louisiana
No. 98-CV-146-E
_____
January 31, 2001

Before KING, Chief Judge, and WIENER and DENNIS, Circuit Judges.

PER CURIAM:[*]

_____

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Plaintiff-Appellant Robert Hagerty appeals from the grant of summary judgment in favor of Defendants-Appellees Kevin Joseph Van Duser, et al. For the following reasons, we AFFIRM.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case arises from a car accident that occurred in New Orleans on January 27, 1997, shortly before the 1997 Super Bowl. The National Football League (the "NFL") hired Paul Ridgeway Companies, Inc. ("Ridgeway"), as it had since the 1994 Super Bowl, to perform transportation consulting services for the 1997 Super Bowl and related events, including inter alia arranging all necessary local transportation and designing and implementing parking plans.

Ridgeway generally hires employees, both individuals and companies, on an "event specific," rather than a permanent, basis.[2] Ridgeway had hired the plaintiff, Robert Hagerty, on an individual basis for a number of earlier events, including the Atlanta, Miami, and Tempe Super Bowls and World Youth Day. However, for the 1997 Super Bowl, Ridgeway subcontracted with Straight Shot Concrete, LLC ("Straight Shot")[3] to "lay out and

---

[2]   Ridgeway uses oral, not written, contracts in the hiring of its employees.

[3]   Straight Shot Concrete, LLC was started by Robert Hagerty and "some of [his] friends" in July 1996. Robert Hagerty is the president of Straight Shot. In his appellate brief, he refers to himself both as an "independent contractor" of Straight Shot and an "employee" of Straight Shot. Because he has offered

2

manage parking lots." Specifically, it subcontracted with Straight Shot for the services of Hagerty and Jeff Cotrell. In return for Hagerty's services, Ridgeway paid Straight Shot a flat fee of $250 per day. Additionally, Hagerty personally received a $25 per diem for meals. Finally, Ridgeway paid Hagerty's airfare and housing and, as arranged by Ridgeway, the NFL provided a car for his use.[4] As part of the oral contract, Straight Shot was required to have its own insurance.

On the morning of the accident, Cotrell was not feeling well and, because Cotrell and Hagerty were sharing a car, Hagerty decided to leave the car with Cotrell in order to allow him to use the car later in the afternoon. In order to get to the job site, Hagerty "hitched" a ride with Kevin Joseph Van Duser, a Ridgeway employee and a defendant in this appeal. Van Duser drove and Hagerty rode in the passenger seat. On the way to the job site, the car was struck by another vehicle driven. Hagerty was immediately taken to the hospital. He applied for and

_____

no evidence as to his independent contractor status and his arguments on appeal do not address this distinction, but rather presuppose his status as an employee, we do not reach this issue.

[4] Ridgeway asserts that it paid for Hagerty's airfare and housing and arranged for the NFL to provide a vehicle for Hagerty's transportation to and from the job sites. Hagerty does not expressly concede this, but admits that neither he nor Straight Shot paid for the airfare, hotel room, or car. He simply states that he does not know who paid for the hotel room or airfare and that the car was provided as a courtesy by the NFL. We do not find these statements in conflict with Ridgeway's assertions.

3

received worker's compensation benefits pursuant to the policy provided by Straight Shot.[5]

Hagerty filed suit against multiple defendants on January 16, 1998. Some of those defendants, Van Duser, TIG, and Pathfinder (the "defendants"), moved for summary judgment asserting that, because Hagerty was a statutory employee of Ridgeway, under Louisiana law the defendants were entitled to tort immunity. On March 21, 2000, the district court denied the motion, stating that there were material issues of fact in dispute regarding the relationship between Ridgeway, Hagerty, and Straight Shot. The defendants filed a motion for reconsideration, and, on May 2, 2000, the district court granted the motion, stating that regardless of whether Hagerty was a direct employee of Ridgeway or an employee of Straight Shot, he was limited to a worker's compensation remedy.[6]

Hagerty appeals the grant of summary judgment.

## II. STANDARD OF REVIEW

---

[5] Hagerty did not receive worker's compensation benefits from any Ridgeway policy.

[6] In regards to the remaining defendants, on May 12, 2000, the district court granted summary judgment on Hagerty's claim against Ridgeway based on the parties stipulation that any summary judgment ruling entered as to Van Duser would apply to Ridgeway and, on June 7, 2000, the court dismissed Hagerty's claims against Pitre, Allstate Insurance Company, and Darlene Wheeler based on Hagerty's assertion that he would not pursue those claims.

4

This court reviews a district court's grant of summary judgment de novo, "applying the same criteria used by the district court in the first instance." Bussian v. RJR Nabisco, Inc., 223 F.3d 286, 293 (5th Cir. 2000). Summary judgment is appropriate if the record shows "'that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" Allen v. Rapides Parish Sch. Bd., 204 F.3d 619, 621 (5th Cir. 2000) (quoting Taylor v. Principal Fin. Group, Inc., 93 F.3d 155, 161 (5th Cir. 1996)). "[W]e must view all facts in the light most favorable to the nonmovant." Cardinal Towing & Auto Repair, Inc. v. City of Bedford, 180 F.3d 686, 690 (5th Cir. 1999).

The party seeking summary judgment bears the burden of demonstrating an absence of evidence to support the nonmovant's case, "which it believes demonstrate[s] the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). However, if the party seeking summary judgment will bear the ultimate burden on the issue at trial, "it must adduce evidence to support each element of its defenses and demonstrate the lack of any genuine issue of material fact with regard thereto." Rushing v. Kan. City S. Ry. Co., 185 F.3d 496, 505 (5th Cir. 1999), cert. denied, 120 S. Ct. 1171 (2000).

After the movant has presented a properly supported motion for summary judgment, the burden shifts to the nonmoving party to show with "significant probative evidence" that there exists a

genuine issue of material fact.  See Conkling v. Turner, 18 F.3d 1285, 1295 (5th Cir. 1994).  Unsupported allegations, conclusory in nature, are insufficient to avoid summary judgment.  See Simmons v. Lyons, 746 F.2d 265, 269 (5th Cir. 1984).

"The mere existence of a disputed factual issue . . . does not foreclose summary judgment.  The dispute must be genuine and the facts must be material."[7]  Prof'l Managers, Inc. v. Fawer, Brian, Hardy & Zatskis, 799 F.2d 218, 222 (5th Cir. 1986).  A fact is "material" if its resolution in favor of one party might affect the outcome of the lawsuit under governing law.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  An issue is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party.  See id.

"As an Erie court, although we apply federal procedural rules including the summary judgment standard, we apply

---

[7]  We note that Hagerty argues that whether he was in the course and scope of employment is a factual determination for the jury to make and therefore should not be decided on a motion for summary judgment.  However, where the material facts on the issue are not in dispute, the question of course and scope may be disposed of on motion for summary judgment.  See Keating v. Shell Chem. Co., 610 F.2d 328, 333 (5th Cir. 1980) ("By summary judgment or otherwise the Trial Court may properly determine that on facts which are uncontradicted, or impliedly found most favorable to Keating, Benson could not, as a matter of Louisiana law, be outside the § 1032 course and scope of employment."); Bolton v. Tulane Univ. of La., 692 So. 2d 1113, 1119 (La. Ct. App. 1997) ("Unlike the granting of a motion for summary judgment finding that an employee was not within the scope of his employment, the granting of a motion for summary judgment finding that an employee was within the course and scope of his employment is a proper use of a motion for summary judgment."); Leflore v. Coburn, 665 So. 2d 1323, 1330 (La. Ct. App. 1995).

6

Louisiana's substantive law."  Brock v. Chevron U.S.A., Inc., 976 F.2d 969, 971 (5th Cir. 1992).

### III. DISCUSSION

Under Louisiana law,[8] an employer is liable for paying worker's compensation benefits to an injured employee.  See LA. REV. STAT. ANN. § 23:1031(A) (West 1996);[9] see also Bolton v. Tulane Univ. of La., 692 So. 2d 1113, 1120 (La. Ct. App. 1997). Louisiana law further provides that worker's compensation is the exclusive remedy of the injured employee.  See LA. REV. STAT. ANN. § 23:1031(A);[10] see also Bolton, 692 So. 2d at 1120.  An employer

---

[8]  There are three provisions of the Louisiana Code relevant to our inquiry: §§§ 23-1031, 23-1032, and 23-1061. These provisions were all amended by § 1 of Acts 1997.  However, § 3 of Acts 1997, No. 315 provides: "The provisions of this Act shall be applied prospectively only and shall not apply to any cause of action arising prior to the effective date of this Act[, June 17, 1997]."  Because the accident occurred in January 1997, the case must be interpreted under the provisions as they existed prior to the 1997 amendments, and, therefore, the pre-Amendment versions are cited in the opinion.

[9]  Section 23-1031(A) provides as follows: "If an employee not otherwise eliminated from the benefits of this Chapter receives personal injury by accident arising out of and in the course of his employment, his employer shall pay compensation in the amounts, on the conditions, and to the person or persons hereinafter designated."  LA. REV. STAT. ANN. § 1031(A) (West 1996).

[10]  Section § 23:1032(A) provides:

 A. (1)(a) Except for intentional acts provided for in Subsection B, the rights and remedies herein granted to an employee or his dependent on account of an injury, or compensable sickness or disease for which he is

7

seeking tort immunity under these provisions bears the burden of proving its entitlement to the immunity.  See Bostwick v. M.A.P.P. Indus., Inc., 707 So. 2d 441, 445 (La. Ct. App. 1997); Bolton, 692 So. 2d at 1120; Tucker v. Northeast La. Tree Serv., 665 So. 2d 672, 677 (La. Ct. App. 1995); Hebert v. Jeffrey, 653 So. 2d 842, 844 (La. Ct. App. 1995).  Additionally, the immunity is available not only to employers, but also to co-employees and insurers.  See Hill v. W. Am. Ins. Co., 635 So. 2d 1165, 1169 (La. Ct. App. 1994).

Hagerty argues that he was not in the course and scope of his employment when the accident occurred and that, therefore Ridgeway is not entitled to tort immunity.[11]  The burden is on Ridgeway to prove Hagerty was injured in the course and scope of his employment and that, therefore, his sole remedy is worker's compensation.

---

entitled to compensation under this Chapter, shall be exclusive of all other rights, remedies, and claims for damages.

LA. REV. STAT. ANN. § 23:1032(A) (emphasis added).

[11]  We note that in the district court Hagerty argued that Ridgeway was not entitled to the tort immunity defense because he was not an employee of Ridgeway, but of Straight Shot.  The district court held that the determination of whether Hagerty was a direct employee of Ridgeway or an employee of Straight Shot, a subcontractor of Ridgeway, was not material because, in either situation, Hagerty would be limited to a worker's compensation remedy if the injury occurred in the course and scope of his employment.  Because Hagerty did not appeal this finding, the sole issue before this court is whether the injury occurred in the course and scope of employment.

> Generally, a party to a lawsuit seeking to prove that
> an employee was within the course and scope of his
> employment must prove two elements: (1) that the injury
> suffered by the employee arose out of the employment
> ("the arising-out-of requirement"), and (2) that the
> employee suffered the injury during the course of his
> employment ("the during-course-of requirement").

Bolton, 692 So. 2d at 1120; see also LA. STAT. ANN. § 23:1031;

Keith v. Gelco Corp., 705 So. 2d 244, 246-47 (La. Ct. App. 1997);

Tucker, 665 So. 2d at 677.

"As a general rule, an accident which occurs while an employee is traveling to and from work is not considered as having occurred during the course and scope of employment." Keith, 705 So. 2d at 247; see also Orgeron v. McDonald, 639 So. 2d 224, 227 (La. 1994); Johnson v. Templeton, 768 So. 2d 65, 70 (La. Ct. App. 2000); Lorraine v. Theriot, Inc., 729 So. 2d 1160, 1163 (La. Ct. App. 1999); Tucker, 665 So. 2d at 677; McBride v. R.F. Kazimour Transp., 583 So.2d 1146, 1147 (La. Ct. App. 1991) ("The general rule is that employees are not covered by workman's compensation when traveling to and from work."). "This rule is premised on the theory that ordinarily, the employment relationship is suspended from the time the employee leaves his work to go home until he resumes his work." Lorraine, 729 So. 2d at 1163; see also Orgeron, 639 So. 2d at 227 ("[A]n employee's place of residence is a personal decision not directly controlled by the employer, and treating commuting time as part of the determination of course and scope of employment would remove

9

manageable boundaries from the determination."); <u>Keith</u>, 705 So. 2d at 247.

However, courts have established a number of exceptions to the general rule. See <u>Tarver v. Energy Drilling Co.</u>, 645 So. 2d 796, 798-99 (La. Ct. App. 1994) (listing seven recognized exceptions to the general rule); <u>Yates v. Naylor Indus. Servs.</u>, 569 So. 2d 616, 619-20 (La. Ct. App. 1990) (same).  One such exception is where the transportation is furnished as an incident of employment: "The courts have held employees entitled to workmen's compensation in those cases in which the employer had concerned himself with the transportation of his employees—he has furnished transportation . . . <u>and/or</u> the employee is furnished travel expenses or is paid wages for time spent in traveling." <u>Castille v. Sibelle</u>, 342 So. 2d 279, 281 (La. Ct. App. 1977) (emphasis added) (citations omitted); <u>see also</u> <u>Keith</u>, 705 So. 2d at 247 ("One exception to the rule occurs when the employer has furnished transportation as an incident to the employment agreement, either through a vehicle or payment of expenses, or where wages are paid for the time spent in traveling.").[12]

---

[12]  We note that some cases have misquoted this exception, stating that the requirement that wages be paid for time spent traveling is in addition to the requirement that the employer has furnished transportation as an incident to the employment agreement.  <u>See, e.g.,</u> <u>Tucker</u>, 665 So. 2d at 677; <u>Hebert</u>, 653 So. 2d at 844.  We follow the exception as originally stated. Furthermore, we note that the Louisiana Supreme Court has not required that wages be paid for travel time in order to find the employer provided transportation as an incident of employment. <u>See</u> <u>Michaleski v. W. Preferred Cas. Co.</u>, 472 So. 2d 18, 20 (La.

10

The evidence reveals that Hagerty was in New Orleans to perform work for Ridgeway. Ridgeway paid for his air travel and his hotel room and gave him a $25 per diem for meals. Hagerty admits he did not pay for a car, but that a car was provided for him by the NFL. We do not find that inconsistent with Ridgeway's assertion that, as was its usual practice at these events, it arranged for the NFL to provide cars for some of its employees, including some of the employees of its subcontractors. Furthermore, on the day of the accident Ridgeway was riding in a car arranged for by Ridgeway and driven by a Ridgeway employee. The accident occurred while driving from the hotel (where Hagerty and several other Ridgeway employee were staying) to the job site. We agree with the district court that this evidence supports the finding that transportation was furnished to Hagerty as an incident of employment, and not as a gratuity.

The decision in Keith v. Gelco Corp., 705 So. 2d 244 (La. Ct. App. 1997), is instructive. In Keith, the employee-plaintiffs were returning from a work site in a vehicle owned by their employer and driven by their supervisor. The court found

_____

1985) (stating the exception as "when transportation is furnished as an incident of employment, either through a vehicle, a conveyance and driver, or payment of expenses" with no mention of the necessity of wages paid for time spent traveling); see also Hill, 635 So. 2d at 1169-70 (same); McBride, 583 So.2d at 1147 (same).

Hagerty asserts that because he was not paid for travel or time spent traveling, the accident did not occur in the course and scope of employment. Even if these facts are in dispute, they are not material because they do not alter the outcome.

11

that those facts indicated that the accident, which occurred during that drive home, was in the course and scope of their employment, although it was uncertain if they were paid for the time spent traveling. Id. at 248.

> Although employees were not required to travel to and from work and their homes in company vehicles, it is clear from the affidavits and depositions submitted by both sides that it was customary for the crew to ride in the company vehicle with their operator/supervisor to and from the work site. . . . [The employer's] custom of providing transportation is contrary to the plaintiffs' assertion that the ride which plaintiffs accepted from [their supervisor] on the day of the accident was gratuitous.

Id.

The distinguishing feature between those cases that find the travel within the course and scope of employment and those that find it a mere gratuity appears to be the regularity with which the employer provided the transportation. See, e.g., Johnson, 768 So. 2d at 71-72; Lorraine, 729 So. 2d at 1161-63.

> 'The fact that the employer occasionally provides transportation to accommodate an employee is not enough to bring the situation within the exception to the general rule that trips to and from the place of work are outside the course of employment. . . . In view of the informal character of hiring agreements, the undertaking to provide transportation must usually be implied from the circumstances. For this reason, the fact that there is a prevailing practice of carrying employees back and forth is important, and the fact that such trips have been made only infrequently or irregularly has been regarded as an indication that the arrangement is one of accommodation only.'

Hebert, 653 So. 2d at 844 (first alteration in original) (citing MALONE AND JOHNSON, LOUISIANA CIVIL LAW TREATISE, WORKER'S COMPENSATION

12

§ 170, at 392 (1994)). Ridgeway's regular practice of arranging, in advance, for the provision of vehicles for their employees and subcontractors implies that the transportation is an incident of employment and not, as Hagerty's argues, a gratuity.

The cases cited by Hagerty, Hebert v. Jeffrey, 653 So. 2d 842 (La. Ct. App. 1995), and Hill v. West American Insurance Co., 635 So. 2d 1165 (La. Ct. App. 1994), are distinguishable. In Hebert, four employees, including a supervisor, "met at a predetermined location, intending to follow each other to the jobsite." Id. at 844. The supervisor offered to drive and the other employees accepted his offer. Id. The court found that the accident on the way to the job site was not in the course and scope of employment because it was an unplanned, gratuitous offer by the supervisor. Id. at 845. In the normal course of work, the employer required the employees to provide their own transportation and did not furnish travel expenses or pay for travel time. Id. at 844. "The incidental occasion on which transportation was provided to [the employee] was insufficient to place [him] in the course and scope of his employment at the time of the accident." Id. at 845 (emphasis added).

The transportation provided by the supervisor in Hebert was unplanned and atypical. By contrast, the evidence shows that Ridgeway regularly arranged for transportation to be provided to its employees for use during the various events around the country and that Ridgeway arranged for this transportation in

13

advance.  See Johnson, 768 So. 2d at 71 (distinguishing Hebert on the grounds that this employer had regularly provided transportation or travel expenses and arranged for the transportation in advance).

Hill is similarly distinguishable.  In Hill, an employee took the truck owned by the employer and drove from the job site to a nearby market during her lunch break.  See Hill, 635 So. 2d at 1167.  The employee was using the truck while on her lunch break, having left the job site and taken the truck without informing her supervisor.  Id. at 1169.  The court found the accident that occurred during the drive was not within the scope and course of her coworker's employment because the use of the vehicle to go to lunch was entirely personal and did not further the employer's business. Id. at 1170.  Therefore, although it was customary for employees to use the trucks for this purpose, the court found that the company had provided the truck for this type of personal use only a courtesy and not as an incident to employment.  By contrast, Ridgeway arranged for the vehicles precisely to allow its employees to travel from the hotel, for which it was paying, to the various job sites around the city.  Hagerty was not on a personal errand, but was in the vehicle for the very reason for which the vehicle was provided.

We agree with the district court that the accident occurred in the course and scope of Hagerty's employment, and, therefore, his exclusive remedy is in worker's compensation.[13]

## IV.  CONCLUSION

For the reasons stated above, we AFFIRM the judgment of the district court.

---

[13]  Ridgeway also argued that two other exceptions to the general rule applied.  As we find the evidence sufficient to support the grant of summary judgment on their first theory, we need not address the other exceptions.